IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LESLIE GRIFFITH,<br>2619 Newton Street, N.E.<br>Washington, D.C. 20018 | COMPLAINT<br><br>JURY TRIAL DEMANDED |
|             Plaintiff, | |
| v. | |
| PAUL BARNES,<br>12512 Woodsong Lane<br>Bowie, Maryland 20721 | |
| MICHAEL BROWN,<br>14501 Pleffner Court<br>Bowie, Maryland 20720 | |
| IREIS, L.L.C.,<br>12512 Woodsong Lane<br>Bowie, Maryland 20721 | |
|             Defendants. | |

**COMPLAINT TO OBTAIN DAMAGES, EQUITABLE,
DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiff Leslie Griffith ("Plaintiff" or "Ms. Griffith"), by and through her undersigned counsel, alleges the following:

**INTRODUCTION**

1.    This action for compensatory and punitive damages, equitable, declaratory and injunctive relief, arises out of an unconscionable loan and fraudulent practices whereby Defendants Paul Barnes ("Defendant Barnes"), Michael Brown ("Defendant Brown"), and IREIS, L.L.C. ("Defendant IREIS") (collectively, "Defendants") engaged in a predatory scheme to take

title to the home of Ms. Griffith and rob Ms. Griffith of the equity in her home through a fraudulent loan scheme.

2.      Defendants operated a scheme that has been unfortunately common in the Washington, D.C. area wherein predators locate and prey on individuals who are in dire financial straits, financially unsophisticated and facing the loss of their homes through foreclosure. Property values have increased dramatically in recent years, and thus, even individuals with serious financial difficulties often have wealth in the form of equity in their home. Predatory lenders seek to strip that wealth through high-cost financing, or in more recent years, through various forms of "foreclosure avoidance" schemes in which at-risk homeowners are convinced to transfer title to the predator and become renters with an option to repurchase the property. Predators implement this scheme under the guise of a loan to obtain title to an individual's home and to retain for themselves virtually all of the equity that the individual had built up in the property.

3.       In this instance, Defendants perpetrated this foreclosure avoidance scheme on Ms. Griffith, charged an unconscionable interest rate on the sham "loan," sought to evict her from her family home and proceeded to sell her home to multiple buyers.

4.      Defendants lured Ms. Griffith with a promise to help save her family home from foreclosure by offering her a loan with an excessively high interest rate despite her lack of a job or any means to repay the loan. In actuality, Defendants' "loan" to Ms. Griffith was merely an illusion designed to make Ms. Griffith believe that Defendants were helping her keep ownership of and remain living in her home.

5.      Specifically, Defendant Barnes, acting on behalf of himself and Defendant IREIS, convinced Ms. Griffith to temporarily transfer her home to Defendant IREIS under the

guise of loaning her money to keep her home from being foreclosed upon ("Loan Agreement" or "Agreement"). In addition, Defendant Barnes represented that Defendant IREIS would hold her home in trust for two years during which time she would be able to repurchase her home by repaying the loan.

6.    In fact, Defendants had no intention of honoring the terms of the Agreement which would have allowed Ms. Griffith to repurchase her home. Unbeknownst to Ms. Griffith, Defendant Barnes transferred title to Ms. Griffith's home to a third party, Defendant Brown, a week after obtaining Ms. Griffith's power of attorney. This sale was made shortly after the Loan Agreement was made and before the loan proceeds were dispersed to Ms. Griffith. In addition, Defendants transferred title to Ms. Griffith's home to yet another person, Pamela Davis, within the two years she had to repurchase her home.

7.    Moreover, despite the fact that Defendants assured Ms. Griffith that, if she chose, she could end the Agreement by accepting a $35,000 payout, they had no intention of living up to this promise either. When once again faced with the possibility of losing her home due to her inability to keep up with the "loan" payments to Defendants, Ms. Griffith elected to take the payout provided in the terms of her Agreement with the Defendants. However, Defendants failed to honor their Agreement to purchase the home, to which they had already unscrupulously claimed title; refused to pay Ms. Griffith $35,000 as required by the Agreement; and, instead, Defendants sought to evict Ms. Griffith from her home.

8.    As a result of the Defendants actions, Ms. Griffith, through counsel, brings this action for: (1) damages based on violations of the federal Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, et seq., the Home Ownership and Equity Protection Act ("HOEPA"), 15 U.S.C. §§ 1602(aa) and 1639 and 12 C.F.R. § 226, et seq., ("Regulation Z"); (2) damages based on

3

violations of the District of Columbia's Consumer Protection Procedures Act ("CPPA"), D.C. Code § 28-3901 et seq.; (3) damages based on violation of the District of Columbia's Tenant's Opportunity to Purchase Act, D.C. Code § 42-3404.1, et seq.; (4) damages based on violations of D.C. Code § 28-3301, et seq.; (5) damages based on Defendants' fraudulent inducements and misrepresentations in the formation of loan contracts; (6) damages based upon Defendants' abuse of the trust that Ms. Griffith placed in them; (7) damages based on Defendants' having induced Ms. Griffith to enter into an unconscionable loan contract; and (8) damages based on Defendants' breach of their contract with Ms. Griffith.

## Jurisdiction

9.     This Court has jurisdiction due to the amount in controversy exceeding $75,000 and as a result of complete diversity of citizenship between Ms. Griffith and all Defendants.  This Court further has jurisdiction due to this action arising out of a question of federal law.

## Parties

10.     Plaintiff, Ms. Griffith, is an adult citizen of the District of Columbia.  She resides in a single family home located at 2619 Newton Street, N.E., Washington, D.C. 20018.

11.     Defendant IREIS, is a limited liability company formed under the laws of the State of Maryland.  Defendant IREIS' principal place of business is located at 12512 Woodsong Lane, Bowie, Maryland, 20721.  According to its Articles of Organization, Defendant IREIS is a company formed, in pertinent part, to "Buy, rehabilitate, own, and manage real estate property; to hold, acquire, invest, mortgage, lease and convey real and personal property in any part of the world, so far as necessary or expedient in conducting the business of the company; to engage in any and all business related to the real estate business."

4

12.     Defendant Michael Brown is an adult citizen of the State of Maryland. He resides at 14501 Pleffner Court, Bowie, Maryland 20720.

13.     Defendant Paul Barnes is an adult citizen of the State of Maryland. He resides at 12512 Woodsong Lane, Bowie, Maryland 20721. Defendant Barnes is the Resident Agent of Defendant IREIS, in the State of Maryland.

## Facts

14.     Ms. Griffith resides in her family home located at 2619 Newton Street, N.E. in Washington, D.C. She is twenty-eight years old. In December of 1998, at the age of twenty, Ms. Griffith began caring for her seriously ill mother, who was suffering from a debilitating condition, myositis arthritis, among other ailments. Ms. Griffith inherited her family home when her mother passed away in 2001.

15.     In March of 2004, Ms. Griffith took a mortgage on the family home for $95,000 and paid off an earlier mortgage on the property.

16.     By September of 2004, Ms. Griffith had fallen behind in her mortgage payments and was searching for ways to solve this problem.

17.     In early September 2004, Ms. Griffith spoke to a friend, Kelly Profit ("Ms. Profit"), who worked as an administrative assistant to Defendant Barnes at Keller Williams Realty. Ms. Profit informed Ms. Griffith that Defendant Barnes could help her keep her home and offered to put Ms. Griffith in contact with Defendant Barnes.

18.     Ms. Griffith spoke to Defendant Barnes via telephone shortly thereafter in September 2004. During the call, Defendant Barnes pressured Ms. Griffith to meet with him immediately saying that it was imperative because the bank could foreclose at any time and that Defendant Barnes would not be able to help her after the bank started proceedings. Ms. Griffith

5

met Defendant Barnes at her home on September 20, 2004, less than a week after that telephone call.

19.    During this meeting, Defendant Barnes told Ms. Griffith that his company, Defendant IREIS, was formed by a group of real estate investors and that they type of arrangement he was offering her was standard for their business.  He informed Ms. Griffith that she was a credit risk because she was unemployed, but that he and his company wanted to help her out.

20.    Defendant Barnes offered Ms. Griffith a loan that he said was standard for his business with the following terms:  (1) Defendant Barnes and/or Defendant IREIS would pay off Ms. Griffith's $95,000 mortgage and in return give Ms. Griffith $25,000; (2) Ms. Griffith would pay Defendant Barnes and/or his company Defendant IREIS $850 a month for a period of two years; (3) at any time during the two years, Ms. Griffith had the right to repurchase her home for $170,000; (4) at any time during the two years, Ms. Griffith had the right to accept a lump sum payment of $35,000 to terminate the contract and "sell" her home to Defendant Barnes and/or Defendant IREIS; and (6) Defendant Barnes and/or Defendant IREIS was responsible for the upkeep of the property, including utilities (the "Loan Agreement" or "Agreement").

21.    The Loan Agreement offered to Ms. Griffith had an effective interest rate in excess of the maximum 24% per annum interest rate permitted by law in the District of Columbia.  This fact was never disclosed to Ms. Griffith.  Ms. Griffith received no disclosure documents related to the loan nor a copy of the appraiser's report subsequently obtained by Defendant Barnes.

22.    During the meeting on September 20, 2004, Defendant Barnes induced Ms. Griffith to sign a number of documents in order to obtain the loan.  On information and belief,

these documents included: (1) an agreement which set forth the terms of the loan agreement described above; (2) an "Agreement to Sell Real Estate"; and (3) an "Authorization to Release Information/Limited Power of Attorney" ("Limited Power of Attorney").

23.    Defendant Barnes explained that the purpose of the "Agreement to Sell Real Estate" was to transfer title of Ms. Griffith's home to Defendant IREIS, which would hold it in trust for two years or until she repurchased the home pursuant to the terms of their Agreement.

24.    Defendant Barnes also told Ms. Griffith that the Limited Power of Attorney was necessary to make the loan and pay off the existing mortgage. When Ms. Griffith questioned whether the Limited Power of Attorney would be in effect until she repurchased her home in two years, Defendant Barnes stated that it would only be in effect until the home was transferred to Defendant IREIS to be held in trust and Ms. Griffith had received the $25,000.

25.    The Limited Power of Attorney form which Defendant Barnes induced Ms. Griffith to sign on September 20, 2004, lacked the basic formalities for such a document in the District of Columbia as well as incorrectly listed Ms. Griffith's home address. Consequently, Defendant Barnes induced Ms. Griffith to sign a "Special Power of Attorney" on December 21, 2004.

26.    On December 28, 2004, without Ms. Griffith's knowledge or consent, Defendant Barnes, holding himself out as "Leslie Griffith's attorney-in-fact" executed a deed transferring title to Ms. Griffith's home to Defendant Brown, not Defendant IREIS, as he had represented to Ms. Griffith. The deed evidencing the transfer of the Griffith family home to Defendant Brown recites that $250,000 was paid for the property. However, above and beyond the initial payment of $25,000 and the payoff of her mortgage, Ms. Griffith did not receive any money or compensation in relation to the secret sale of her home. Thus, through the transfer of

title to Ms. Griffith's home to Defendant Brown, Defendant Barnes and/or IREIS retained for themselves $130,000 in equity that Ms. Griffith had in her home as of December 2004 even though Ms. Griffith was entitled to approximately $155,000 had she knowingly sold her home.

27.    On information and belief, Defendant Brown works with Defendant Barnes on real estate related matters. Ms. Griffith has never met Defendant Brown.

28.    Ms. Griffith was never given a HUD-1 in relation to the "sale" of her home nor was Ms. Griffith informed of, or invited to participate in, the closing held with respect to the sale of her home.

29.    Defendant Barnes gave Ms. Griffith a check for $25,000 on January 15, 2005.

30.    On March 9 or 10, 2005, Ms. Griffith and Defendant Barnes met to discuss the Agreement. During this meeting, Defendant Barnes told Ms. Griffith that changes had to be made to the Agreement setting forth the terms of their arrangement; and requested she provide him with the original Loan Agreement document. Defendant Barnes was to return the Agreement during a scheduled meeting with Ms. Griffith on or about March 29, 2005. Defendant Barnes cancelled that meeting and never returned the Agreement.

31.    Ms. Griffith made the required payments of $850 to Defendant Barnes and/or IREIS in February 2005 and March 2005.

32.    Ms. Griffith called Defendant Barnes to discuss taking the option of accepting the $35,000 payout in May 2005 because she found herself unable to make the required monthly payments. She was unable to reach Defendant Barnes in person, but left a message with his secretary, during the third week of May, asking Defendant Barnes to call her.

The following week, she left a message on his cell phone stating that she wanted to discuss taking the payout. Defendant Barnes never responded to these messages.

33.    On June 15, 2005, Defendant IREIS served Ms. Griffith with a 30 Day Notice to Terminate Tenancy ("30 Day Notice").

34.    Thereafter Ms. Griffith finally reached Defendant Barnes by telephone and stated that she was electing to take the payout. Defendant Barnes instructed her to not worry about the 30 Day Notice. He said that he was busy but that he would call her back shortly to set up a meeting to make arrangements for the payout. Defendant Barnes never called back; and despite Ms. Griffith's attempts to contact Defendant Barnes several times after this conversation, she never heard from him again.

35.    Despite the fact that Defendant IREIS was the entity on behalf of which Defendant Barnes acted in extending the loan to Ms. Griffith and the entity that was, according to Defendant Barnes' representations, to hold Ms. Griffith's home in trust, Defendant IREIS thereafter acted as Defendant Brown's agent in seeking to evict Ms. Griffith from her own home.

36.    On September 22, 2005, Defendant IREIS filed a complaint seeking possession of Ms. Griffith's home in the Superior Court of the District of Columbia, Civil Division, Landlord Tenant Branch (the "Landlord Tenant Court action").

37.    On November 4, 2005, Defendant Brown executed a Deed transferring title to Ms. Griffith's home to Pamela S. Davis. The deed evidencing the transfer of the Griffith home to Pamela Davis recites that $380,000 was paid for the property. Thus, Defendant Brown, having obtained title to Ms. Griffith's home through a fraudulent transaction, was able to extract and retain for himself an additional $130,000 in equity that rightfully belonged to Ms. Griffith.

38.    Defendant Brown did not inform Ms. Griffith that he intended to sell her home.  Nor did Defendant Brown or Defendant IREIS provide Ms. Griffith with an opportunity to repurchase her home.

39.    In the Landlord Tenant Court action, Defendant IREIS, on behalf of itself and as agent for Defendant Brown, sought to evict Ms. Griffith from her home.  On November 23, 2005, counsel for Defendant IREIS in the Landlord Tenant Court action represented that Defendant IREIS managed the property at 2619 Newton St., N.E. as agent for Defendant Brown and amended the complaint in that action on November 30, 2005 to reflect that Defendant IREIS was, in fact, Defendant Brown's agent.

40.    Following the filing of a motion to dismiss the Landlord Tenant Court action by Ms. Griffith, demonstrating that neither Defendant IREIS nor Defendant Brown owned the property and thus did not have standing to seek Ms. Griffith's eviction from her home, Defendants IREIS and Brown agreed to the dismissal of their eviction action on February 10, 2006.

41.    Ms. Griffith has never been contacted by or met Pamela Davis.  Nor has Ms. Griffith received any money or compensation in relation to this sale of her home to Ms. Davis.

42.    On information and belief, Defendant Barnes, though at times using a different corporate entity, has entered into multiple similar transactions.

## First Cause of Action

### Violations of the Truth in Lending Act, Home Ownership and Equity Protection Act, and Regulation Z

Against Defendants Barnes and/or IREIS,

43.    Plaintiff, Ms. Griffith, realleges and incorporates herein by reference paragraphs nos. 1-42.

44.    The transaction entered into between Ms. Griffith and Defendants Barnes and/or IREIS was a loan that qualifies as a consumer credit transaction within the meaning of TILA, 15 U.S.C. § 1601, et seq.

45.    On information and belief, Defendants Barnes and/or IREIS originated two or more loans covered by HOEPA, 15 U.S.C. §§ 1602(aa) and 1639.

46.    Defendants Barnes and/or IREIS, were creditors within the meaning of TILA, 15 U.S.C. § 1602(f) and 12 C.F.R. § 226, et seq. ("Regulation Z"), §§ 226.2(a)(17).

47.    On information and belief, Defendants Barnes and/or IREIS, in the ordinary course of business, regularly extended or offered to extend consumer credit for which a finance charge is or may be imposed or which, by written agreement, is payable in more than four installments.

48.    Defendants Barnes and/or IREIS, are the person(s) to whom the payments required by the transaction that is the subject of this action were initially payable.

49.    TILA, HOEPA and Regulation Z mandate that all closed end consumer loans be accompanied by a Truth in Lending disclosure of material terms; that additional disclosures be provided for certain high cost mortgage loans; and that high cost mortgages be subject to certain additional limitations and protections.

50.     TILA and Regulation Z cover closed-end consumer loans secured by residential property.  TILA, 15 U.S.C. §§ 1638, 1639; Regulation Z, 12 C.F.R. § 226.18.

51.     TILA requires that creditors, in extending credit, reveal essential credit terms and appraise consumers of certain terms and conditions of their loans.

52.     Defendants Barnes and/or IREIS, violated TILA by failing to provide Ms. Griffith with any of the material disclosures or Notices of Right to Cancel required by TILA.

53.     The loan made by Defendants Barnes and/or IREIS, to Ms. Griffith was a high cost consumer credit transaction within the meaning of 15 U.S.C. § 1602(aa)(1) and was subject to HOEPA § 1639 and Regulation Z §§ 226.31, 226.32.  These sections of TILA and Regulation Z impose additional disclosure requirements and prohibitions for certain high cost mortgages.

54.     Defendants Barnes and/or IREIS, failed to provide the disclosures mandated by 15 U.S.C. § 1639 and 12 C.F.R. §§ 226.31, 226.32, in that, *inter alia*:

> a.     Defendants Barnes and/or IREIS, violated TILA, 15 U.S.C. § 1639(1) in failing to provide the required disclosure that Ms. Griffith was not required to complete the Agreement and that Ms. Griffith could lose her home and any money put into it by not meeting any obligations under the loan;
>
> b.     Defendants Barnes and/or IREIS, failed to provide the required three day advance warning disclosure prior to consummation of the transaction in violation of TILA, 15 U.S.C. § 1639(b) and Regulation Z §§ 226.31(b), 226.32(c); and

c.    Defendants Barnes and/or IREIS, failed to provide this disclosure clearly and conspicuously in writing, in a form that Ms. Griffith could keep, in violation of Regulation Z §§ 226.31(b).

55.    Accordingly, Defendants Barnes' and/or IREIS' violations of TILA and HOEPA entitle Ms. Griffith to rescind the Loan Agreement and obtain actual damages, costs, attorneys fees and statutory and enhanced damages under 15 U.S.C. § 1640.

## Second Cause of Action

### Violations of D.C. Code § 28-3301

Against Defendants Barnes and/or IREIS,

56.    Plaintiff, Ms. Griffith, realleges and incorporates herein by reference paragraphs nos. 1-55.

57.    Defendants Barnes and/or IREIS charged Ms. Griffith interest on the principal amount of her loan at a rate in excess of 24% per annum in violation of D.C. Code §28-3301.

58.    Defendants Barnes' and/or IREIS' failure to deliver material disclosures required in connection with the loan to Ms. Griffith, outlined in the First Cause of Action above, also violate D.C. Code § 28-3312, entitling Ms. Griffith to actual and punitive damages and attorney fees pursuant to D.C. Code § 28-3314.

## Third Cause of Action

### Violation of the D.C. Tenant Opportunity to Purchase Act ("TOPA"), D.C. Code § 42-3404.01, et seq.

Against Defendants Brown and IREIS,

59.    Plaintiff realleges and incorporates herein by reference paragraph nos. 1-58.

60.    On November 4, 2005, Defendant Brown executed a deed (the "Davis Deed") conveying title to Ms. Griffith's home to Ms. Pamela S. Davis.

61.    The Davis Deed recites that Ms. Davis paid consideration of the sum of three hundred eighty thousand dollars ($380,000) in exchange for Defendant Brown granting Ms. Davis fee simple ownership of:

LOT NUMBERED TWENTY-TWO (22) IN SQUARE NUMBERED FORTY-THREE HUNDRED TWELVE (4312) IN A SUBDIVISION MADE BY ST. JOSEPH'S HOME SCHOOL, AS PER PLAT RECORDED IN LIBER 96 AT FOLIO 92 IN THE OFFICE OF THE SURVEYOR FOR THE DISTRICT OF COLUMBIA.  IMPROVED BY PREMISES 2619 NEWTON STREET, N.W.

62.    The real property and dwelling described in the Davis Deed were the property and dwelling to which Ms. Griffith formerly held title.

63.    On September 22, 2005, Defendant's Counsel, Jonathan Windle, filed a Complaint for Possession of Real Estate ("L/T Complaint") in the Landlord Tenant Branch of the Civil Division of the Superior Court of the District of Columbia as the authorized agent of the "Plaintiff/Landlord" in that action, Defendant IREIS, LLC.

64.    On November 30, 2005, Defendant's Counsel amended the L/T Complaint to assert that Defendant IREIS, LLC was acting as agent for Defendant Brown (the "Amended L/T Complaint").

65.    Both the L/T Complaint and Amended L/T Complaint asserted that Ms. Griffith was the Defendant IREIS and/or Defendant Brown's tenant in the home located at 2619 Newton Street, N.E., Washington, D.C. 20018.

66.    The D.C. Tenant Opportunity to Purchase Act (the "D.C. TOPA"), D.C. Code § 42-3404.02(a), requires that, before an owner of a housing accommodation may sell the

accommodation, the owner shall give the tenant an opportunity to purchase the accommodation at a price and terms which represent a bona fide offer of sale.

67.     As a single family home leased to a "tenant," the residence at 2619 Newton Street, N.E., qualified as a "housing accommodation."

68.     If Ms. Griffith was the Defendant IREIS' and/or Defendant Brown's tenant, as alleged in the L/T Complaint and the Amended L/T Complaint, then Defendants IREIS and Brown had an obligation to give Ms. Griffith an opportunity to purchase the property located at 2619 Newton Street, N.E. at a price and terms which represented a bona fide offer of sale before selling the property, as required by D.C. Code § 42-3404.02(a).

69.     Defendants IREIS and Brown violated the D.C. TOPA by, *inter alia*:

a.     Failing to notify Ms. Griffith of Defendant Brown's intent to sell the property located at 2619 Newton Street, N.E.;

b.     Failing to notify Ms. Griffith of the asking price and material terms of the sale of the property located at 2619 Newton Street, N.E. before selling it to Ms. Davis.;

c.     Failing to provide any notification to Ms. Griffith indicating that she had the right to purchase the property located at 2619 Newton Street, N.E.; and

d.     Failing to provide Ms. Griffith with any notification that a contract with Ms. Davis to sell the property located at 2619 Newton Street, N.E. had been entered into.

70.     Defendants IREIS' and Brown's failure to provide Ms. Griffith with an opportunity to purchase the property located at 2619 Newton Street, N.E. was a violation of the

D.C. TOPA, for which Ms. Griffith is entitled to compensatory and actual damages and attorney fees.

### Fourth Cause of Action

Breach of Fiduciary and Agency Duties

Against Defendants Barnes and/or IREIS,

71.     Plaintiff, Ms. Griffith, realleges and incorporates herein by reference paragraphs nos. 1-70.

72.     Defendants Barnes and/or IREIS owed fiduciary and agency duties to Ms. Griffith.  These duties arose from Defendants Barnes and IREIS gaining Ms. Griffith's trust and confidence directly cultivated by and reposed in Defendants Barnes and IREIS representations of expertise and trustworthiness in assisting Ms. Griffith to avoid foreclosure and stay in her home, or stated another way, to protect Ms. Griffith's interests.  Further, Defendant Barnes, having convinced Ms. Griffith to grant him power of attorney to complete the paperwork necessary to effect the loan Defendant Barnes and/or IREIS offered Ms. Griffith, willingly assumed responsibility for fulfilling Ms. Griffith's wishes, protecting her interests, and acting for her best interests.  Moreover, Defendant Barnes held himself out as Ms. Griffith's "attorney-in-fact."

73.     Defendants Barnes and/or IREIS breached their fiduciary and agency duties to the detriment of Ms. Griffith and for the benefit of themselves, including but not limited to the duties of loyalty, utmost good faith, disclosure, and fair dealing, by among other things:

a.     Taking advantage of Ms. Griffith's inability to protect her own interests by reason of her desperate circumstances and lack of sophistication;

b.  Falsely representing the nature and significance of certain documents presented to Ms. Griffith for her signature;

c.  Using Ms. Griffith's power of attorney secretly to convey title to Ms. Griffith's home to Defendant Brown;

d.  Conveying title to Ms. Griffith's home to Defendant Brown for an amount which far exceeded the amount that Ms. Griffith was led to believe she could repurchase her home for and thereby improperly depriving Ms. Griffith of the right to repurchase her home;

e.  Conveying title to Ms. Griffith's home for $250,000 and concealing the occurrence and details of that sale to Defendant Brown as well as retaining the consideration paid or received as a result of that sale, thereby stripping Ms. Griffith of the bulk of the equity in her home;

f.  Refusing or limiting Ms. Griffith's access to the loan transaction documents so as to conceal from Ms. Griffith and any other interested parties the material facts concerning the loan Ms. Griffith obtained from Defendants Barnes and IREIS;

g.  Causing Ms. Griffith, through their false and misleading representations, to pay $850 per month to Defendant IREIS for several months knowing that Defendants Barnes and IREIS had already conveyed title to Ms. Griffith's home to Defendant Brown and having had no existing intention to allow Ms. Griffith the opportunity to repurchase her home as agreed;

17

h.    Stripping Ms. Griffith of title to her home for less consideration than she was promised she would receive if she opted to waive her right to repurchase her home; and

i.    Causing Ms. Griffith, through their false and misleading representations, to fear eviction from her home as a result of Defendant IREIS filing a Complaint for Possession of Real Estate in the Landlord and Tenant Branch of the Superior Court of the District of Columbia.

74.    As a direct and proximate result of these and related breaches of their fiduciary and agency duties, Ms. Griffith suffered injury and damages for which Defendants Barnes and/or IREIS are liable.  In addition, Defendants Barnes and IREIS each obtained for themselves sums of money that in equity should have been retained by, or provided to, Ms. Griffith.

75.    Due to Defendants Brown and/or IREIS's breaches of fiduciary and agency duties, Ms. Griffith is due compensatory and punitive damages.

## Fifth Cause of Action

### Fraud

Against Defendants Barnes and IREIS,

76.    Plaintiff, Ms. Griffith, realleges and incorporates herein by reference paragraphs nos. 1-75.

77.    Defendants Barnes and IREIS, owed a duty of completeness and truthfulness in obtaining and communicating information related to the loan offered to Ms. Griffith.

18

78.     At all relevant times, Defendant Barnes was the organizer and agent of Defendant IREIS and exercised dominion and control over Defendant IREIS and its performance of its obligations to Ms. Griffith.

79.     Defendants Barnes and IREIS held themselves out as professionals and persons or entities willing to assist individuals facing foreclosure to maintain ownership of their homes.

80.     As will be demonstrated in detail at trial, Defendant Barnes, acting for himself and on behalf of Defendants Brown and IREIS, communicated to Ms. Griffith information that was false, misleading, and/or materially incomplete or otherwise concealed material information from Ms. Griffith for the purpose of influencing or guiding Ms. Griffith's conduct, including without limitation, for the purpose of appointing Defendant Barnes as her power of attorney.  This false communication and intentional concealment included, but was not limited to:

a.     Defendants utilized artificial and misleading practices, which among other things, masked Defendants' Barnes and IREIS true intentions in entering into the transaction with Ms. Griffith;

b.     Defendants falsely represented that they would assist Ms. Griffith in keeping her home, while intending to divest Ms. Griffith of title to her home for grossly inadequate consideration and rob her of the equity which had accumulated in her family home;

c.     Defendants misrepresented that Ms. Griffith would be able to repurchase her home within two years when Defendants knew there was no reasonable expectation this could happen, and Defendant

Barnes intended to, and did, immediately convey her home to Defendant Brown;

d.  Defendants falsely represented that the documents Ms. Griffith was induced to sign were for the purpose of rescuing her home from foreclosure and maintaining Ms. Griffith's home ownership when, in fact, they were documents that would be used to attempt to permanently deprive Ms. Griffith of title to her home and the wealth of equity that she had accumulated in her home;

e.  Defendants falsely represented the nature and significance of certain documents presented to Ms. Griffith for her signature, including the power of attorney forms presented for Ms. Griffith's signature;

f.  Defendants misled Ms. Griffith regarding the purpose for which Defendant Barnes obtained Ms. Griffith's power of attorney;

g.  Defendants used Ms. Griffith's power of attorney secretly to convey title to Ms. Griffith's home to Defendant Brown for an amount which far exceeded the amount that she was led to believe she could repurchase her home for, concealed the occurrence and details of that sale from Ms. Griffith, and retained the consideration paid and received as a result of that sale, thereby taking for themselves the equity in her home and depriving Ms. Griffith of her right to repurchase her home;

h.  Defendants failed to make disclosures required by TILA, HOEPA, and Regulation Z;

i.   Defendants induced Ms. Griffith to return the Loan Agreement document and thereafter refused or limited Ms. Griffith's access to the loan transaction documents so as to conceal from Ms. Griffith and any other interested parties the material facts concerning the loan Ms. Griffith obtained from Defendants Barnes and IREIS;

j.   Defendants dispersed funds to Ms. Griffith under the purported Agreement and caused Ms. Griffith, through their false and misleading representations, to pay $850 per month to IREIS, for several months knowing that Defendants Barnes and IREIS had no intention to allow Ms. Griffith the opportunity to repurchase her home as agreed;

k.   Defendants stripped Ms. Griffith of and took title to her home for less consideration than she was promised she would receive if she opted to waive her right to repurchase her home; and

l.   Defendants caused Ms. Griffith, through their false and misleading representations, to fear eviction from her home as a result of IREIS filing a Complaint for Possession of Real Estate in the Landlord and Tenant Branch of the Superior Court of the District of Columbia.

81.   Defendants failed to make disclosures required by TILA, HOEPA and Regulation Z in an effort to induce Ms. Griffith to execute documents that could be used to obtain title to her home and the home equity Ms. Griffith had accumulated under false pretenses.

82.   Defendant Barnes, acting on behalf of himself and Defendant IREIS, made material misrepresentations of fact, with knowledge of their falsity, and omitted material facts,

for the purpose of misleading Ms. Griffith and achieving their scheme to falsely persuade Ms. Griffith that they wished to save her home, but rather intended to deprive her of the title to and the equity in her home.

83.    Defendant Barnes, acting on behalf of himself and Defendant IREIS, intending to deceive Ms. Griffith, induced her to rely on his misrepresentations and misleading omissions.

84.    Ms. Griffith justifiably relied on Defendants Barnes's false representations and misleading omissions and has been damaged as a direct and proximate cause of Defendants' actions.

85.    Defendant Barnes, acting on behalf of himself and Defendant IREIS engaged in the foregoing conduct as part of a scheme to defraud Ms. Griffith, a vulnerable property owner, out of the title equity in her home.

86.    Due to Defendants' acts of fraud, Ms. Griffith is due compensatory and punitive damages.

### Sixth Cause of Action

Unconscionability

Against Defendants Barnes and/or IREIS,

87.    Plaintiff, Ms. Griffith, realleges and incorporates herein by reference paragraphs nos. 1-86.

88.    Ms. Griffith was a new home owner with little knowledge of real estate matters who had fallen behind in her mortgage payments and feared losing her family home to foreclosure.  Ms. Griffith's desperate circumstances and lack of sophistication rendered her unable to protect her own interests.

89.     Defendants Barnes and/or IREIS held themselves out as professionals and persons or entities willing to assist individuals facing foreclosure to maintain ownership of their homes.

90.     Defendants Barnes and/or IREIS knew or should have known that their representations would entice Ms. Griffith to seek their assistance in saving her home from foreclosure.

91.     Ms. Griffith met with and entered into the Agreement with Defendants Barnes and/or IREIS with the reasonable belief that they would help her keep her home.

92.     In effecting the Agreement with Ms. Griffith, Defendants took undue and unfair advantage of Ms. Griffith's limited ability to comprehend the importance of the documents presented for her signature, inability to comprehend the nature of the loan, limited economic resources and lack of sophistication.   Defendants manipulated Ms. Griffith and contrived to induce Ms. Griffith to enter into an Agreement for a loan which they knew she had no reasonable possibility of repaying.

93.     The terms of the Agreement entered into by Ms. Griffith and Defendants Barnes and IREIS were designed by Defendants Barnes and IREIS to be utterly one-sided and to favor only Defendants Barnes and IREIS, including in that they:

a.     Required Ms. Griffith to pay a usurious rate of interest;

b.     Deprived Ms. Griffith of her right to repurchase her home, without recourse, if she missed three loan payments;

c.     Failed to inform Ms. Griffith of the market value of her home as part of their plan to acquire Ms. Griffith's home for a fraction of its value;

d.      Made a loan to Ms. Griffith with knowledge that there was no reasonable probability that she would be able to repay the loan and repurchase her home;

e.      Dispersed funds to Ms. Griffith under the purported Agreement with knowledge that there was no possibility of the contract being completed as promised and no reasonable possibility that she would be able to repurchase her home;

f.      Stripped Ms. Griffith of title to her home for an amount which was significantly less than the home was worth; and

g.      Robbed Ms. Griffith of the vast majority of the equity in her home.

94.    Due to Defendants' Barnes and/or IREIS procurement of an unconscionable Loan Agreement, Ms. Griffith is entitled to compensatory damages pursuant to D.C. Code § 28:2-302.

### **Seventh Cause of Action**

Violations of the D.C. Consumer Protection Procedures Act

Against Defendants Barnes, Brown and IREIS,

95.    Plaintiff, Ms. Griffith, realleges and incorporates herein by reference paragraphs nos. 1-94.

96.    MLBA requires anyone engaged in business as a mortgage lender in the District of Columbia to obtain a license.  D.C. Code § 26-1101, et seq.

97.    Defendants made mortgage loans to Ms. Griffith and others and violated MLBA by failing to obtain a license to do mortgage lending in the District of Columbia.

24

98.    Defendants' violations of the Mortgage Lender and Broker Act ("MLBA"), D.C. Code § 26-1101, et seq., alleged herein constitute violations of the D.C. Consumer Protection Procedures Act ("CPPA").

99.    Sections 28-3904 (e) & (f) of the CPPA make it a violation for any person to misrepresent a material fact which has a tendency to mislead a consumer or to fail to state a material fact if such failure tends to mislead.

100.    Defendants Barnes and IREIS violated Sections 28-3904 (e) and (f) of the CPPA by misrepresenting material facts and by failing to state material facts where such failures tended to mislead Ms. Griffith including:

a.    The misrepresentations and omissions recited in the First, Second, Third, Fourth and Fifth Causes of Action are incorporated herein; and

b.    Defendants failed to explain that, even if Ms. Griffith came to understand that she was being stripped of title to her home for significantly less than its market value, her home was being immediately conveyed to another for an amount that would preclude her from being able to repurchase her home for $170,000 as promised.

101.    Section 28-3904(q) of the CPPA states that it is a violation of the CPPA to "fail to supply to a consumer a copy of a . . . lease, promissory note, trust agreement, or other evidence of indebtedness which the consumer may execute."

102.    Defendants Barnes and IREIS violated Section 28-3904(q) by failing to replace copies of the Loan Agreement and purported lease signed, as agreed.

103.   Section 28-3904(r) of the CPPA prohibits the making of unconscionable contracts.

104.   Defendants Barnes and IREIS violated Section 28-3904(r) by making an unconscionable loan to Ms. Griffith as alleged in the Fourth Cause of Action, which is incorporated herein.

105.   The allegations of the First, Second, Third, Fourth, Fifth and Sixth Causes of Action are incorporated additionally and cumulatively as violations of the CPPA.

106.   The misrepresentations of material facts, which Ms. Griffith justifiably relied upon, and failures to state material facts, were made with knowledge that they were false and/or that their omissions would create a false understanding.

107.   Defendants Barnes, Brown and IREIS, further violated the MLBA by, *inter alia*:

   a.   Failing to require the person closing the loan to provide Ms. Griffith with a properly completed HUD-1 Settlement Statement and disclosures required by TILA and Regulation Z, in violation of D.C. Code Section 26-1114(a)(7); and

   b.   Obtaining Ms. Griffith's signature on evidence of indebtedness at an unauthorized location, her home, for which location the Defendants did not have a license, in violation of D.C. Code Section 26-1104(f)(1).

108.   As a result of Defendants' violations of MLBA, Ms. Griffith is entitled to compensatory, actual and punitive damages and attorney fees.

109.    Defendants' actions constitute unlawful trade practices within the meaning of the CPPA.  As a direct and proximate result of Defendants' actions, Ms. Griffith was stripped of title to her home and the equity accumulated in her home and has suffered damages.

110.    Defendant Brown agreed, explicitly or tacitly, to participate with Defendants Barnes and IREIS in the acts alleged above, and their acts were in furtherance of a common scheme to wrongfully divest Ms. Griffith of title to her home and equity in her home for Defendants' financial profit.

111.    Defendants' violations of the CPPA were intentional, willful and wanton and justify the imposition of treble and punitive damages, as well as attorney fees.

112.    Defendants should also be enjoined from engaging in these unlawful trade practices in the District of Columbia.

### Eighth Cause of Action

Fraudulent Conveyance

Against Defendants Barnes, Brown and IREIS,

113.    Plaintiff, Ms. Griffith, realleges and incorporates herein by reference paragraph nos. 1-112.

114.    Defendant Barnes, holding himself out as Ms. Griffith's "attorney-in-fact" conveyed title to the real property located as 2619 Newton Street, N.E.  The deed recording that sale recites that Defendant Barnes received consideration in the amount of $250,000 from Defendant Brown for Ms. Griffith's home

115.    Upon information and belief, Defendants Brown, Barnes and IREIS have had, and continue to have, business and/or personal relationships with each other.

27

116. Upon information and belief, Defendants Barnes and/or IREIS conveyed title to Ms. Griffith's home to Defendant Brown as part of a common scheme devised to strip Ms. Griffith of title to her home and the equity she had amassed in the home.

117. Upon information and belief, the foregoing sale was made with the intent to hinder Ms. Griffith's ability to recover title to her home as part of Defendant Barnes' and Defendant IREIS effort to defraud Ms. Griffith. The requisite circumstances and intent are set forth in this Complaint, including without limitation, in the allegations set forth in the Fourth, Fifth and Sixth Causes of Action.

118. According to the Davis Deed, Defendant Brown conveyed title to Ms. Griffith's home to Ms. Pamela S. Davis on November 4, 2005. The deed recording that sale recites that Defendant Brown received consideration in the amount of $380,000 from Ms. Davis for Ms. Griffith's home.

119. Upon information and belief, the foregoing sale was made with the intent to further hinder Ms. Griffith's ability to recover title to her home and to continue in the effort to defraud Ms. Griffith. The requisite circumstances and intent are set forth in this Complaint, including without limitation, in the allegations set forth in the Fourth, Fifth and Sixth Causes of Action.

120. As a result of the foregoing, Ms. Griffith is entitled to have the funds or other consideration paid in connection with the sales of her home attached for return to Ms. Griffith, and to any such further relief the Court deems proper.

### Ninth Cause of Action

Unjust Enrichment

Against Defendants Barnes, Brown and IREIS,

121.    Plaintiff, Ms. Griffith, realleges and incorporates herein by reference paragraph nos. 1-120.

122.    Defendants Barnes and IREIS owed fiduciary and agency duties to Ms. Griffith, as set forth in the Second Cause of Action.

123.    In their position as Ms. Griffith's agent and fiduciary concerning Ms. Griffith's interest in her home, Defendants Barnes and IREIS, were entrusted with Ms. Griffith's personal information, consideration received relating to the transfer of title to Ms. Griffith's home to Defendant Brown, and other assets relating to Ms. Griffith's interest in her home.

124.    The breaches of fiduciary and agency duties alleged herein resulted in the acquisition of funds, property and other assets by Defendants Barnes, IREIS and Brown under circumstances that would make it inequitable for them to retain such funds and assets, or the appreciation or income that can either be traced to those funds and assets, against the claims of Ms. Griffith.

125.    Defendants should be compelled to remit to Ms. Griffith, as the rightful owner, the aforementioned funds or other consideration paid or promised to Defendants relating to the sales of Ms. Griffith's home, plus interest or investments gained thereon.

126.    Ms. Griffith is entitled to a constructive trust and/or resulting trust on all assets or funds that can be traced to the converted property or that improperly benefited Defendants Barnes, IREIS or Brown, for the sole purpose of delivering these proceeds to Ms. Griffith.

### Tenth Cause of Action

Breach of Contract

Against Defendants Barnes and IREIS,

127.    Plaintiff, Ms. Griffith, realleges and incorporates herein by reference paragraphs nos. 1-126.

128.    To the extent that the Court finds that Ms. Griffith entered into a binding contract with Defendants Barnes and IREIS pursuant to which Defendants Barnes and IREIS had the authority, and/or properly exercised their authority, to sell Ms. Griffith's home, then on information and belief, Defendants Barnes and IREIS were bound to pay Ms. Griffith $35,000 pursuant to the payout option she was offered under the Agreement.

129.    Ms. Griffith fully performed her obligations under the contract and there are no conditions precedent to Defendants Barnes and IREIS's obligation to perform that have not been satisfied, excused or waived.

130.    Defendants Barnes and IREIS breached their duty when they refused to allow Ms. Griffith to exercise the payout option and instead attempted to evict Ms. Griffith from her home.  Defendants Barnes and IREIS breach is material.

131.    Ms. Griffith has suffered monetary damages as a direct and proximate result of that breach of contract in an amount to be determined at trial.

WHEREFORE, Plaintiff prays:

132.    That the Court grant the relief requested in each Cause of Action herein;

133.    That the Court find Defendants jointly and severally liable to Ms. Griffith for the claims asserted against Defendant Barnes and IREIS;

134.    That the Court award Ms. Griffith's actual, compensatory, statutory and punitive damages in an amount to be established at trial;

135.    That the Court declare the Special Power of Attorney signed by Ms. Griffith void, thereby preventing Defendant Barnes from holding himself out as Ms. Griffith's "attorney-in-fact" or using the Special Power of Attorney for any other future purpose;

136.    That the Court award $1,500 per violation or treble damages under the D.C. Consumer Protections Procedures Act or other applicable law;

137.    That the Court form a constructive trust, require an accounting, and disgorge from all Defendants and restore to Ms. Griffith her monies and or other property that was improperly obtained or otherwise should be restored in equity to Ms. Griffith, including the profits and gains taken in the form of monies and properties which were taken and distributed but not properly earned.

138.    That the Court grant a permanent injunction enjoining all Defendants from engaging in the unconscionable and fraudulent activities described herein.

139.    That the Court award Ms. Griffith attorney fees and costs incurred in this action under the Truth in Lending Act, Home Ownership and Equity Protection Act, Regulation Z and the D.C. Consumer Protections Procedures Act or other applicable law;

140.    That the Court grant any such other further relief as the Court deems just and proper.

Plaintiff demands a jury trial for all issues so triable.

Respectfully Submitted,

_____

Dated: September 21, 2006

Andrew L. Sandler, D. C. Bar No. 381825
Keba Riley, D.C. Bar No. 494993
1440 New York Avenue, N.W.
Washington, D.C.  20005
(202) 371-7000

Isabelle M. Thabault, D.C. Bar No. 318931
Robert M. Bruskin, D.C. Bar No. 164293
Washington Lawyer's Committee for
   Civil Rights and Urban Affairs
11 Dupont Circle, N.W., Suite 400
Washington, D.C. 20036
(202) 319-1000

*Counsel for Plaintiff*

32