UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LESLIE GRIFFITH,<br><br>      Plaintiff,<br><br>v.<br><br>PAUL BARNES, *et al.*,<br><br>      Defendants. | Case No:<br>1:06CV01648 (HHK) |

### PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO VACATE ORDER OF DEFAULT

Plaintiff Leslie Griffith ("Griffith"), by and through her counsel, submits this memorandum in support of her opposition to Defendants' Motion to Vacate the default entered against Defendants Paul Barnes ("Barnes") and IREIS, LLC ("IREIS") (collectively referred to as Defendants) by the Clerk of this Court on February 26, 2007. (Docs. 15 and 16.)

### BACKGROUND

This case involves a predatory lending scheme in which Defendants Barnes and his company IREIS misled Plaintiff into believing that the Defendants would assist Plaintiff in keeping title to her home, but instead fraudulently induced Plaintiff to sign documents which Defendants used twice to transfer title to Griffith's home to Barnes' accomplices, each time extracting and keeping for himself and IREIS thousands of dollars of the equity in Ms. Griffith's home. (See Pl.'s Compl. at ¶ 26 to 37.)

There is no dispute that Defendants were properly served in early December, 2006 and failed to either answer, or obtain an extension within which to answer. (Docs. 10 and 11.) There is also no dispute that Defendants have twice requested settlement meetings with Plaintiff and twice have walked away form those meetings. Specifically, Defendants contacted Plaintiff in January 2007, and indicated a desire to resolve the dispute. To that end a meeting was held on January 25, 2007. (Affidavit of Keba Riley ("Riley Aff."), attached hereto as Ex. A at ¶8.) By that time Defendant had retained "settlement counsel". At that meeting, Plaintiff made a settlement proposal. The parties agreed to meet in early February to hear Defendants' response to that proposal. Instead, Defendants refused to schedule the meeting and eventually Defendants' settlement counsel withdrew. (Id. at ¶¶ 9-11.) It was only at this point, when it was clear that Defendants were not engaged in good faith negotiations, that Plaintiff requested that a default be entered. (Id. at ¶ 12.) Subsequently, Defendants retained new counsel, who have filed the instant motion. New counsel also requested a settlement meeting which was schedule for March 29, 2007. However on March 27, 2007 Plaintiff was advised that Defense counsel was "unable to contact Mr. Barnes" and the meeting was canceled. (Id. at ¶ 17.) Clearly, Defendants have no interest in settlement but rather seek only to delay the inevitable judgment of this Court.

In the motion *sub judice*, Defendants attribute their default to their alleged reliance upon Plaintiff's counsel's representation that a default would not be sought while settlement negotiations were ongoing. (Defendant's Motion to Vacate Order of Default

("Def. Mtn.") at ¶ 2.)[1] This allegation does them no good. First, Defendants were already in default before any discussions between the parties occurred. More importantly, while Plaintiff was willing to defer seeking default while the parties engaged in good faith settlement negotiations, Defendants failure to do so negated any such "promise" and made Plaintiffs request for entry of default on February 23, 2007 entirely appropriate. Defendants subsequent failure to appear at a scheduled settlement meeting only confirms the need for this motion to be denied.

## ARGUMENT

### I. Defendants' motion to vacate should be denied.

Rule 55 (a) of the Federal Rules of Civil Procedure states clearly "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default." Id. Vacatur of the entry of default against Defendants Barnes and IREIS is appropriate only if the Defendants have shown "good cause" for their failure to answer the Complaint. FED. R. CIV. P. 55(c). Courts weigh the following factors in determining whether "good cause" exists: (1) whether the failure was willful, (2) the meritoriousness of the alleged defense, and (3) prejudice to the plaintiff should the default be set aside. See Keegel v. Key West & Caribbean Trading Co., Inc., 627 F.2d 372, 373 (D.C. Cir. 1980); Int'l Painters and Allied Trades Union and Indus. Pension Fund v. H.W. Ellis Painting Co., Inc., 288 F. Supp. 2d 22, 26 (D.D.C.

---

[1] All citations herein to Defendants' Motion are made to Doc. 22, the Motion to Vacate filed on behalf of Defendant Barnes. Each argument herein applies with equal force to the Motion to Vacate filed on behalf of Defendant IREIS, Doc. 23, as Defendant IREIS's Motion to Vacate is identical to Defendant Barnes's Motion to Vacate.

2003). The Defendants have utterly failed to show "good cause" for their failure to answer in December, 2006. Indeed, absent some evidence to the contrary—and Defendants offer none--this Court must assume that Defendants' failure to answer or at least seek an extension of time in which to answer was willful. Moreover, Defendants have asserted boiler-plate defenses which do not establish a meritorious defense. Finally, Plaintiff has been and is being prejudiced by the delay caused by Defendants' failure to answer the Complaint, and that prejudice will continue if the motion to vacate is not denied.

    A.    <u>Defendants' failure to file timely Answers was willful.</u>

The rules of Civil Procedure are clear. Once a complaint is properly served, a defendant has twenty (20) days to answer or otherwise respond to the complaint. FED. R. CIV. P. 12(a)(1)(A). Here, Defendants do not contest service of the Summons and Plaintiff's Complaint. (Def.'s Mtn. ¶ 2.) Nor do Defendants state any reason for their failure to respond to the Summons and Complaint on or before December 26, 2006, when their answers were due under the Rules. Nor do they explain their failure to even seek an extension of time to answer. Instead, Defendants claim to have relied solely on Plaintiff's counsel's statement that a default would not be sought while settlement negotiations were ongoing. (Def.s' Mtn. at ¶2.) However as noted above, this commitment by Plaintiff's counsel was not made until January, well after Defendants were in default. More importantly, also as noted above, those settlement negotiations ended in early February when Defendants reneged on a commitment to respond to Plaintiff's settlement proposal, and their settlement counsel withdrew. Thus on February 23, 2007, when Plaintiff sought default, there was simply no agreement between the

parties precluding such action. Given these facts, Plaintiff's counsel did not breach an agreement with Defendants when it sought default; that agreement had already been abrogated by Defendants' own conduct in reneging on their commitment to engage in good faith settlement discussions—circumstances exacerbated by Defendants' failure to attend yet another settlement meeting requested by their new counsel.

Faced with similar facts in Int'l Painters, *supra*, the District Court refused to vacate a default judgment. There, defendant failed to file an answer despite having been warned that if it did not do so by a specific date, Plaintiff would seek a default. Although the defendant believed it would be granted more time to respond to the complaint because the parties were engaged in settlement negotiations, the court found this unconvincing, warning that "[p]arties engaged in litigation frequently discuss the possible settlement of their disputes, but the mere existence of such negotiations, without more, does not excuse the parties from attending court appearances and otherwise complying with the Court's orders." Int'l Painters, 288 F.Supp.2d at 27. Here, once Defendants withdrew from settlement talks, any commitment by Plaintiff to not seek default was plainly no longer in effect and Defendants' apparent belief that they could defer default indefinitely was clearly unjustified and cannot excuse their intentional failure to respond to the Complaint. These facts coupled with the fact that Defendants' initial failure to respond to the Complaint in December 2006 was also willful and not based on any alleged agreement with Plaintiff, demonstrate that Defendants' failure to file a responsive pleading at any time prior to entry of default was willful.

B. <u>Defendants' answers do not present meritorious defenses.</u>

Defendants also fail to make the showing required by the second prong of

the good cause test, which requires, at minimum, a proffer of a complete meritorious defense. See Int'l Painters, 288 F. Supp. 2d at 26. In Int'l Painters, the District Court stated that "a defendant's allegations are considered meritorious if they contain 'even a hint of a suggestion' which, if proven at trial, would constitute a complete defense, Keegal, 627 F.2d at 374, but they must be 'good at law so as to give the factfinder some determination to make.'" Int'l Painters, 288 F. Supp. 2d at 28 (finding that none of defendants asserted defenses, including the assertion that plaintiff failed to state a claim, constituted a complete defense even if they could be proven at trial). As shown below, Defendants' proffered Answers here fail to give the Court a sufficient basis to make the required determination as to whether Defendants have, meritorious defenses to any, much less all, of Plaintiff's claims.

Defendants' Motion to Vacate and its attachments offer a number of affirmative defenses, all of which are merely blanket assertions, clearly disfavored by courts. See State Farm Auto. Ins. Co. v. Riley, 199 F.R.D. 276, 279 (N.D. Ill. 1997) (the Court included in the cited Appendix to its decision a compendium of its most frequently encountered pleading errors "committed by defendants' lawyers who have failed to conform to the clear directives – or to the basic thrust – of the Federal Rules of Civil Procedure"). Rule 8(c) provides, in relevant part, that "[i]n pleading to a preceding pleading, a party shall set forth affirmatively" certain defenses listed in the Rule "and any other matter constituting an avoidance or affirmative defense." FED. R. CIV. P. 8(c). Unfortunately, as the court so duly noted in State Farm, defense counsel are often "fond of following the direct responses to a complaint's allegations with a set of purported affirmative defenses [] that don't really fit the concept." State Farm, 199 F.R.D. at 279.

Plaintiffs' Complaint states detailed factual allegations. Defendants attach to their Motions Answers to Plaintiff's Complaint that consist of mere boilerplate recitations of the affirmative defenses available under Rule 8(c), each of which is applied to Plaintiff's Complaint in its entirety without regard to the appropriateness or relevance of the affirmative defense to Plaintiff's claims, individually or collectively. See Fleet Bus. Credit Corp. v. Nat'l City Leasing Corp., 191 F.R.D. 568 (D.N.D. Ill. 1999)(striking the defenses of failure to state a claim, laches, and waiver and estoppel as insufficiently pled).

For instance, Defendant's Second Defense simply declares that "Plaintiff's Complaint fails to state a claim upon which relief can be granted," and is bereft of any specificity in support of that assertion.[2] See Id. at 569 (striking affirmative defense of failure to state a claim as insufficiently pled because stated defense is ("no more than a recitation of the standard for a motion to dismiss"). In addition, Defendant avers, without a hint of the basis for its Sixth Defense that "Plaintiff's Complaint is barred by the doctrines of estoppel, collateral estoppel and/or res judicata." This style of pleading gives no indication at to which of Plaintiff's claims any of these affirmative defenses are to be applied. Further, for collateral estoppel to apply, the issues on which preclusion is sought must have been actually and necessarily determined in a prior action and the issues in both actions must be the same. See White v. Fosco, 599 F.Supp. 710, 717 (D.D.C. 1984). None of Plaintiff's claims have been determined in a prior action. Defendant's Fourth Defense asserts that "Plaintiff's Complaint is barred by the doctrine of laches." The defense of laches requires a finding that the plaintiff inexcusably or unreasonably delayed

---

[2] References to Defendant's various defenses are based upon the defenses offered in Verified Amended Answer of Paul Barnes and IREIS, LLC, which was filed as both Doc. 24 and Doc. 25.

in bringing the claim and that the delay was prejudicial to the defendant. Rozen v. District of Columbia, 702 F.2d 1202 (D.C.Cir.1983). Defendant's Answer provides no suggestion of Defendant's basis for asserting that Plaintiff did not act diligently in pursing her claims. See Id. at 570-71. Finally, Defendant's Third Defense is an assertion that "Plaintiff's Complaint is barred by the applicable statute of limitations." Not only does that statement give no indication of which claim(s) Defendants assert are barred, but it appears to have been made without regard to the actual statutes of limitations applicable to Plaintiff's claims. See D.C.Code Ann. § 12-301 (three-year statute of limitations for contract, fraud, and breach of fiduciary duty).

By making these bald assertions, each of which is expressed as barring "Plaintiff's Complaint" as opposed to addressing claims included therein, or pleading any facts in support of those defenses, Defendants fail to give the Court or Plaintiff's counsel notice of the predicate for the claimed defenses. See State Farm, 199 F.R.D. at 279. Thus, not only are each of Defendants' Second through Twelfth affirmative defenses insufficient pursuant to FED. R. CIV. P. 12(f), they are inadequate to satisfy the Defendants burden under Keegel, supra, to demonstrate that they have meritorious defenses to each and every one of Plaintiffs' claims.

C.   Prejudice to Plaintiff.

Contrary to Defendants assertion that Plaintiff will not be prejudiced by vacating the entry of default, doing so would force Plaintiff "to expend further time and money to collect on a claim as to which there are no meritorious defenses." Int'l Painters, 288 F.Supp.2d at 31. For over three months, Plaintiff has been unable to avail herself of the discovery tools provided by the Federal Rules, including the Court's subpoena powers,

to request documents and information in order to prove her claims, to protect her interests, or to otherwise probe the meritless affirmative defenses which Defendants now attempt to raise. Time is of the essence here. As Defendants note, (Def.'s Mot. at ¶ 7), Ms. Griffith continues to reside in her home despite Defendants' fraud and their effort to wrongfully evict her from her home. (Pl.'s Compl. at ¶ 35 to ¶ 40.) Ms. Griffith, however, remains in the precarious position of living under circumstances where Defendants Barnes or IREIS, or the current record owner of her home—another Barnes accomplice, Pamela Davis --could file another action for eviction, as Defendant IREIS dismissed its prior action for eviction without prejudice. Moreover, Ms. Davis has expressed difficulty in continuing to meet the mortgage obligations during the pendency of this action. As a result, there is a serious risk that the note-holders will foreclose on the property, forcing plaintiff and her children out of their home.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully request that the Court deny in its entirety Defendants Barnes's and IREIS's Motions to Vacate Entry of Default

Dated: March 30, 2007

Respectfully submitted,

/s/ Keba U. Riley
Andrew L. Sandler, D.C. Bar No. 381825
Keba Riley, D.C. Bar No. 494993
1440 New York Avenue, N.W.
Washington, D.C. 20005
(202) 371-7000

Isabelle M. Thabault, D.C. Bar No. 318931
Robert M. Bruskin, D.C. Bar No. 164293
Washington Lawyer's Committee for

    Civil Rights and Urban Affairs
11 Dupont Circle, N.W., Suite 400
Washington, D.C. 20036
(202) 319-1000

*Attorneys for Plaintiff*