# Exhibit 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LESLIE GRIFFITH,<br><br>                    Plaintiff,<br><br>v.<br><br>PAUL BARNES, *et al.*,<br><br>                    Defendants. | Case No:<br>1:06CV01648 (HHK) |

### PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS FROM DEFENDANTS PAUL BARNES AND IREIS, LLC

NOW COMES Plaintiff, Leslie Griffith, by and through counsel, and pursuant to Rule 34 of the Federal Rules of Civil Procedure, and hereby requests that Defendants Paul Barnes ("Barnes') and IREIS, LLC ("IREIS") produce documents hereinafter described or permit Leslie Griffith or her attorneys to inspect and copy at the offices of Skadden, Arps, Slate, Meagher & Flom LLP, 1440 New York Avenue, Washington, D.C., each of the following documents within thirty (30) days after service hereof, in accordance with the Instructions and Definitions set forth hereinafter.

## **INSTRUCTIONS**

1.  This request is continuing in character to the extent provided by the Federal Rules of Civil Procedure and requires you to produce any further Document or Documents as provided in Rule 34(a)(1) of the Federal Rules of Civil Procedure. You are required to supplement your answers to each request between the time responses are served and the time of trial. If, after producing the requested documents you obtain or become aware of any further documents responsive to this set of requests, you are required to produce such additional documents.

2.  In answering each request, you are requested to furnish all documents, however obtained, which are in your possession, custody or control, including, but not limited to, all documents available to you, your attorneys, investigators, consultants, agents or other representatives acting on your behalf, or which appear in your records.

3.  If any request calls for documents that are not in your possession, custody or subject to your control or ascertainable by you, your attorneys or others acting on your behalf upon reasonable inquiry, then identify the custodian or possessor of such information or documents, if known.

4.  The documents produced in response to these requests shall be organized either to correspond to the categories in these requests, or as they are kept in the ordinary course of business. In either case, all documents produced shall:

a. Be produced with all associated file labels, file headings and file folders together with the responsive documents from each file, and each file shall be identified as to its owner or custodian; for any document stored in electronic media, the file name, path and directory information for each such request shall also be provided;

b. If produced in hard copy, all pages now stapled or fastened together shall be produced stapled or fastened together, and shall include all attachments currently or previously appended to each document, regardless of whether such attachments themselves would be independently responsive to these requests;

c. All documents that cannot be legibly copied shall be produced in original form; and

d. Each page of each document shall bear a unique number that includes a symbol or abbreviation that identifies the producing party.

5. Each of these requests shall be construed independently and shall not be limited by any other request, except that documents responsive to more than one request need be produced only once.

6. If, in answering these requests, you claim that any request, or a definition or instruction applicable thereto, is ambiguous, do not use such claim as a basis for refusing to respond, but rather set forth as part of the response the language you claim is ambiguous and the interpretation you have used to respond to the individual request.

7. If, in answering these requests, you object to any part of a request, each part of said request shall be treated separately. If an objection is made only to one subpart, the remaining subpart(s) shall be answered. If an objection is made on the basis that the request or subpart thereof calls for information which is beyond the scope of discovery, the request or subpart thereof shall be answered to the extent that it is not objectionable.

8. In the event that more than one copy of a document exists, produce every copy on which there appears any notation or marking of any sort not appearing on any other copy (including routing or filing instructions) or any copy containing different attachments from any other copy.

9. If you refuse to disclose any document requested herein (or any portion thereof) on the grounds of privilege or work product, identify in a privilege log each such document or portion thereof as to which the objection is made, and with request to each document so identified, state:

    a. The medium (e.g., electronic or paper), type (e.g., memorandum, letter, report, etc.) and the length of the document;

    b. The existence and identity of any attachments to the document;

    c. The author(s) and addressee(s);

    d. The person(s) to whom any copy was furnished;

    e. The date of the document;

    f. The subject matter of the document

    g. The document request herein to which the document responds; and

    h.    The exact basis for your claim that such document (or any portion thereof) need not be disclosed.

    i.    If an attachment to a document is being withheld on the grounds of privilege, in addition to being identified as required by subpart (b), above, such attachment shall be identified in the privilege log as a separate document.

## DEFINITIONS

Notwithstanding any definitions below, each word, term, or phrase used in these Interrogatories is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure.

2.    "Documents" or "records" shall include, by way of illustration only and not by way of limitation, the following items, whether printed or reproduced by any process, or written and/or produced by hand, or in electronic format and whether or not claimed to be privileged or otherwise exclusive of discovery, namely: notes, correspondence, papers, letters, communications of any nature, telegrams, memoranda, notebooks of any character, summaries or records of personal conversations, diaries, calendars, routing slips, reports, publications, invoices, receipts, specifications, shipping papers, purchase orders, charts, plans, drawings, photographs, sketches, blueprints, minutes or records of meetings, discussions and conversations, reports and/or summaries of interviews, reports and/or summaries of investigations, opinions or reports of consultants' forecasts, agreements and

contracts including all modifications and/or revisions thereof, reports and/or summaries of negotiations, brochures, pamphlets, advertisements, advertising layouts, circulars, trade letters, press releases, drafts of any document, and revisions of drafts of any document, photographs, motion pictures, tape or video recordings, electronic mail or e-mails, or other data compilations of any kind, and insurance or reinsurance policies including all placement slips, cover notes and any other documents evidencing insurance or reinsurance protection and/or any documents that amend such policies, including addenda or letters. A draft or a non-identical copy is a separate document within the meaning of the term "document".

  3. "Communication" shall mean every manner or means of disclosure, transfer, transmittal or exchange of information, whether directly or indirectly, including, but not limited to, any oral, written, telephonic or electronic transmission of information, including, but not limited to, meetings, discussions, conversations, correspondence, telephone calls, memoranda, letters, facsimiles, telexes, conferences, seminars, messages, notes, affidavits, declarations, videotapes, audiotapes, facsimile, Internet, online service, electronic mail or other media.

  4. Parties: The terms "plaintiff" or "defendant" (including, without limitation, third-party plaintiff, third-party defendant, counter claimant, cross-claimant, counter-defendant, and cross-defendant), shall mean Leslie Griffith or Paul Barnes and/or IREIS, LLC, respectively. Further, a party's full or abbreviated name or pronoun referring to a party, mean that party and, where applicable, its officers, directors, and employees.

5. "Person" is defined as any natural person or any business, legal or governmental entity or association. Any reference to any person, corporation, business, entity or association shall include their present and former officers, directors, employees, representatives, attorneys, agents, subsidiaries, affiliates, parents, predecessors, successors and assignees, or any other person acting or purporting to act for or on their behalf.

6. "Griffith Home" shall mean the real property located at 2619 Newton Street, N.E., Washington, DC.

7. "Reflect," "refer" and "relate" may be used interchangeably and shall have their commonly-understood meanings, including, but not limited to, analyzing, containing, concerning, constituting, defining, describing, discussing, embodying, evidencing, explaining, identifying, mentioning, setting forth, stating, summarizing, supporting, comprising, reflecting, referring to, relating to, evidencing, consulting, pertaining to, dealing with and showing or in any way pertaining to the subject matter of the relevant Request.

8. "Washington, D.C. metropolitan area" refers to the following counties and independent cities: Washington, District of Columbia; Anne Arundel County; Calvert County; Charles County; Frederick County; Howard County; Montgomery County; Prince George's County; St. Mary's County; Arlington County; Clarke County; Fairfax County; Fauquier County; Loudoun County; Prince William County; Spotsylvania County; Stafford County; Warren County; City of

Alexandria; City of Fairfax; City of Falls Church; City of Fredericksburg; City of Manassas and City of Manassas Park.

9. For the purposes of these Requests, whenever necessary to ensure completeness or accuracy, words importing the masculine gender include the feminine and neuter, words importing the neuter gender include the masculine and feminine, and words importing the singular include the plural.

10. The terms "and" as well as "or" shall be read in the disjunctive, conjunctive or both, as the case may be, consistent with an interpretation that results in a more extensive document production.

11. The terms "all," "any" and "each" shall be construed in the broadest sense consistent with an interpretation that results in the most extensive document production.

12. "And" and "or" shall be construed conjunctively or disjunctively as necessary to make the request inclusive rather than exclusive.

13. "Including" shall be construed to mean "without limitation."

14. "You" or "your" shall mean Barnes and/or IREIS (depending upon the context of the question), as well as any employee or former employee, independent contractor, agent, entity or other person acting or purporting to act on Barnes's and/or IREIS's behalf or which Barnes and/or IREIS acts or has acted on behalf of.

## TIME PERIOD

Unless otherwise specified, and subject to the next sentence, the relevant period of time for purposes of this request is from January 1, 2003 to the date of your response or supplemental response (keeping in mind the continuing nature of this request as set forth above). Any Documents created prior to January 1, 2003 that have been examined, consulted or used in any way since January 1, 2003 are included in the Documents called for by this request.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1)      All documents that reflect, refer to or relate to Leslie Griffith or the Griffith Home, including but not limited to: (a) all documents relating to any loan, agreement or lease relating to the Griffith Home; (b) all documents relating to any transfer of ownership of the Griffith Home; (c) checks, receipts, invoices, deeds of trust, promissory notes, and loan agreements, reflecting payments by IREIS and/or Barnes to Ms. Griffith (or any person on her behalf); (d) checks, money orders, and receipts, reflecting payments by Plaintiff to Mr. Barnes and/or IREIS; (e) Certificates of Occupancy which Barnes and/or IREIS obtained for the Griffith Home; (f) documents reflecting communications by any other person relating to the Griffith Home, including but not limited to any offers made or received by Barnes and/or IREIS to purchase and/or rent the Griffith Home; (g) all rental agreements, leases, offers of purchase, and/or contracts for sale relating to the Griffith Home, including but not limited to all documents relating to any attempted or completed sale and/or encumbrance of the Griffith Home; (h) all documents relating to loans and/or lines of credit obtained using the Griffith Home as collateral and/or security; all HUD-1 Settlement Statements relating to the purported transfer of the Griffith Home to Michael Brown or Pamela Davis; (i) all correspondence, notices, notes, or

any other communication or documents relating to Plaintiff or the Griffith Home; (j) all documents relating to disclosures made by Barnes and/or IREIS to Plaintiff pursuant to: (a) the federal Truth in Lending Act, 15 U.S.C. §§1601 *et seq,*; (b) the D.C. Mortgage Lenders and Brokers Act, D.C. Code §§26-1101, *et seq.*; (c) the D.C. Loan Shark Act, D.C. Code §§28-2201 *et seq.*; (d) the D.C. Home Loan Protection Act, D.C. Code §§26-1151.01 *et seq.*; or (e) the D.C. Tenant's Opportunity to Purchase Act, D.C. Code §§42-3404.1, *et seq.*, regarding extending of a loan related to, or the purported purchasing of and/or otherwise transferring or obtaining title to, the Griffith Home; and (k) all documents that purport to bear the signature or initials of Leslie Griffith, but which were signed by you, including those signed by you as Leslie Griffith's "Attorney-In-Fact" or were otherwise signed by you based upon the powers conferred to you by any power of attorney granted to you by Leslie Griffith.

RESPONSE:

2) All documents you gave to or presented to Leslie Griffith.
RESPONSE:

3) All documents relating to or showing any business relationship between Barnes and/or IREIS, on the one hand, and Michael Brown and/or Pamela Davis on

the other, including but not limited to: (a) all joint venture agreements or other contracts; (b) all documents reflecting payments of any kind between IREIS and/or Barnes on the one hand and Brown and/or Davis, on the other, without regards to whether those payments relate to the Griffith Home; (c) all correspondence, including correspondence between and among any of Barnes and/or IREIS and Brown and/or Davis, relating to Plaintiff and/or the Griffith Home; (d) all documents and all correspondence, including correspondence between and among any of Barnes, IREIS, Brown or Davis, relating to obtaining or attempting to obtain title to homes in the Washington, D.C. metropolitan area based upon knowledge that the homeowner was having difficulty meeting their mortgage obligations; (e) documents evidencing any amounts owed by Barnes or IREIS to Brown or Davis; and (f) all documents indicating amounts due to Barnes or IREIS from Brown or Davis.

RESPONSE:

4)  All documents that reflect, refer to or relate to the solicitation, advertisement and promotion of loans or investments, real estate services, or foreclosure avoidance assistance offered by you including but not limited to fliers, scripts, solicitation letters, telemarketing programs, videotapes, audiotapes, story boards, handouts to homeowners, and other materials used by you.

RESPONSE:

5) All documents that reflect, refer to or relate to real estate transactions or offers to enter into real estate transactions in which you have had involvement in which (a) the selling homeowner was offered an arrangement of the nature offered to Plaintiff, (b) the selling homeowner was offered an arrangement which included an option to repurchase the property (or otherwise redeem title to the property), (c) the property was offered to a potential buyer for investment purposes, (d) you entered into a Joint Venture Agreement or other agreement with the potential buyer which related to any promise or commitment made by you to bear or reimburse the buyer for any costs or expenses related to the property, or (e) where you signed closing documents on behalf of anyone else, including but not limited to where you acted as a real estate agent for the seller or buyer, where you participated in matching a buyer or investor with a property, or you had any other involvement, including but not limited to, the contracts for the sale of such properties, documents evidencing the sale or transfer or such properties, agreements entered into with the homeowner from which the property was transferred, powers of attorney obtained from the homeowner, rental agreements pertaining to the properties and Joint Venture Agreements or other documents reflecting the agreement entered into with the buyer of such properties (including all documents relating to properties sold to Pamela Davis or any member of her family).

RESPONSE:

6)      All documents relating to real estate transactions in which you signed closing documents on behalf of anyone else, without regards to whether you obtained a power of attorney to sign such documents on the individual's behalf.
RESPONSE:


7)      All documents regarding the formation and creation of IREIS, or any other business entity organized by Barnes or IREIS, including but not limited to: (a) the entity's articles of incorporation or organization; (b) by-laws; (c) limited liability company or partnership agreements; (d) the names and addresses of the entity's officers, directors, and members or limited liability company interest holders; (d) any other corporate formation or constitutional document, whether or not the same has been filed with any governmental or regulatory body; (e) the business plan for the entity; and (f) all documents reflecting the entity's policies, practices, procedures, and/or guidelines concerning the acquisition and/or rental of real property (including all contract templates used in conducting the entity's business).
RESPONSE:


8)      All documents relating to or reflecting Barnes's financial status from 2003 to the present, including but not limited to, your state and federal tax returns, bank and/or brokerage account statements, the addresses of any real property beneficially

owned by you, the addresses of any real property beneficially owned by you which were sold or transferred by you since 2000, the make and model of any vehicles beneficially owned by you, and a statement of any debts owed by you.

RESPONSE:

9) All documents relating to or reflecting IREIS's financial status from 2003 to the present, including but not limited to, the records requested with respect to Defendant Barnes's financial status in Plaintiff's Document Request Number 7, where applicable, as well as any financial statements, annual reports made to the state of Maryland, balance sheets, statements of income, statements of cash flow, and minutes of meetings.

RESPONSE:

10) All documents that reflect, refer to or relate to any professional license(s) held by you to conduct business in the Washington, D.C. metropolitan area from 2000 to the present, including but not limited to, any license to practice as a Realtor®, real estate broker or property manager license, license or permit to lend money, or housing business licenses.

RESPONSE:

11) Without regard to time period, all documents that reflect, refer to or relate to any legal actions, whether civil or criminal in nature, taken against you.
RESPONSE:

12) All documents that reflect, refer to or relate to liability insurance held by you or indemnification agreements under which you may benefit that may be applicable to pay damages and/or attorneys fees.
RESPONSE:

13) All documents supporting or relating to any defense in this case.
RESPONSE:

14) All documents relating to any of the transactions or claims set forth in the Complaint.
RESPONSE:

15) All documents IREIS intends to offer into evidence at the trial of this case.

RESPONSE:

16) Any and all documents, tangible items, and/or other information provided to, relied upon by, or generated or produced by, any person IREIS expects to call as an expert witness at the trial of this matter.

RESPONSE:


Dated: July 5, 2007

                                    Respectfully Submitted,

                                    */s/ Keba J. Riley*
                                    Andrew L. Sandler, D.C. Bar No. 381825
                                    Keba Riley, D.C. Bar No. 494993
                                    1440 New York Avenue, N.W.
                                    Washington, D.C. 20005
                                    (202) 371-7000

                                    Isabelle M. Thabault, D.C. Bar No. 318931
                                    Robert M. Bruskin, D.C. Bar No. 164293
                                    Washington Lawyer's Committee for
                                      Civil Rights and Urban Affairs
                                    11 Dupont Circle, N.W., Suite 400
                                    Washington, D.C. 20036
                                    (202) 319-1000

                                    *Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of July 2007, a copy of the foregoing *Plaintiff's First Set of Requests for Production of Documents to Defendant Paul Barnes* was served by U.S. mail to:

    Robert J. Lourie
    William J. Selle, Esquire
    O'Malley, Miles, Nylen & Gilmore, P.A.
    2007 Tidewater Colony Drive, Suite 2B
    Annapolis, MD 21401

*Attorneys for Defendants Paul Barnes and IREIS, LLC*

                                    /s/ Keba U. Riley
                                    Keba U. Riley