UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LESLIE GRIFFITH, | Case No: 1:06CV01648 |
| Plaintiff, | (HHK) (JMF) |
| v. | |
| PAUL BARNES, *et al.*, | |
| Defendants. | |

## MOTION FOR DAMAGES AWARD IN CONNECTION
## WITH DEFAULT JUDGMENT ENTERED ON FEBRUARY 29, 2008

Pursuant to Rules 54(c) and 55(b)(2) of the Federal Rules of Civil Procedure and

D.C. CODE § 28-3905(k), Plaintiff Leslie Griffith respectfully moves this Court for an order

awarding damages in connection with the Default Judgment entered on February 29, 2008, on

each Count of Plaintiff Leslie Griffith's Complaint as to Defendant Paul Barnes and Defendant

IREIS, LLC, who are jointly and severally liable for damages. A hearing is set to determine

damages in this matter for April 15, 2008. A memorandum in support of this motion, a proposed

order, and other supporting papers are attached hereto.

Respectfully submitted,


       /s/ Leslie Abrams
Benjamin Klubes, D.C. Bar No. 428852
Leslie Abrams, D.C. Bar No. 488280
Keba Riley, D.C. Bar No. 494993
1440 New York Avenue, N.W.
Washington, D.C.  20005
(202) 371-7000

Isabelle M. Thabault, D.C. Bar No. 318931
Robert M. Bruskin, D.C. Bar No. 164293
Washington Lawyer's Committee for
  Civil Rights and Urban Affairs
11 Dupont Circle, N.W., Suite 400
Washington, D.C. 20036
(202) 319-1000

*Counsel for Plaintiff*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LESLIE GRIFFITH,<br><br>                  Plaintiff,<br>    v.<br><br>PAUL BARNES, *et al.*,<br><br>                  Defendants. | Case No: 1:06CV01648<br>(HHK) (JMF) |

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION
## FOR DAMAGES AWARD IN CONNECTION WITH DEFAULT JUDGMENT
## ENTERED ON FEBRUARY 29, 2008

Pursuant to Rules 54(c) and 55(b)(2) of the Federal Rules of Civil Procedure and

D.C. CODE § 28-3905(k), Plaintiff Leslie Griffith ("Ms. Griffith") submits this Memorandum of

Law in support of her Motion for Damages Award.

In accordance with the Default Judgment granted by the Court on February 29,

2008, all of the well-pled allegations in Ms. Griffith's Complaint against Defendants are admitted.

Accordingly, Ms. Griffith is seeking damages as set forth below.

## I.    FACTUAL BACKGROUND

On September 25, 2006, Ms. Griffith brought this lawsuit against Defendants Paul

Barnes ("Defendant Barnes"), IREIS, L.L.C. ("Defendant IREIS") (collectively, "Defendants")

and Defendant Michael Brown ("Brown"). The Complaint alleged that the Defendants and

Brown engaged in a predatory scheme to take title to the home of Ms. Griffith, a resident of the

District of Columbia, and rob her of the equity in her home through a fraudulent loan scheme.

Defendant Barnes, acting through Defendant IREIS and two straw purchasers, Brown and

Pamela Davis ("Davis"), operated a scheme that has been unfortunately common in the

Washington, D.C. area wherein predators locate and prey on individuals who are in dire financial straits, financially unsophisticated, and facing the loss of their homes through foreclosure.

In this case, Defendants convinced Ms. Griffith to temporarily transfer title to her home to them under the guise of loaning her money to keep her home from being foreclosed upon. They represented to Plaintiff that Defendant IREIS would hold her home in trust for two years during which time she would be able to repurchase her home by repaying the loan. The terms of the agreement offered by Defendants had an effective interest rate in excess of the maximum 24% per annum interest rate permitted by law in the District of Columbia. Moreover, Defendants had no intention of honoring the terms of the agreement the parties signed which would have allowed Ms. Griffith to repurchase her home. Unbeknownst to Ms. Griffith, Defendant Barnes transferred title to Ms. Griffith's home to a third party, Brown, a week after signing the agreement; and less than a year later, Defendants transferred title to Ms. Griffith's home to yet another person, Davis. Eventually, when Ms. Griffith was unable to meet the terms of the usurious loan, Barnes and IREIS sought to evict Ms. Griffith from her home.

Ms. Griffith brought the instant action for: (1) damages based on violations of the Federal Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq.*, the Home Ownership and Equity Protection Act ("HOEPA"), 15 U.S.C. §§ 1602(aa) and 1639 and 12 C.F.R. § 226, *et seq.*, ("Regulation Z"); (2) damages based on violations of D.C. CODE § 28-3301, *et seq.*; (3) damages based on violation of the District of Columbia's Tenant's Opportunity to Purchase Act ("TOPA"), D.C. CODE § 42-3404.1, *et seq.*; (4) damages based on Defendants' breach of fiduciary and agency duties; (5) damages based on Defendants' fraudulent inducements and misrepresentations in the formation of loan contracts; (6) damages based on Defendants' having induced Ms. Griffith to enter into an unconscionable loan contract; (7) damages based on violations of the

2

District of Columbia's Consumer Protection Procedures Act ("CPPA"), D.C. CODE § 28-3901 *et seq.*; (8) damages based on Defendants' and Brown's fraudulent conveyance of Ms. Griffith's home; (9) damages based on the theory of unjust enrichment; and (10) damages based on Defendants' breach of their contract with Ms. Griffith.

On March 16, 2007, Ms. Griffith's claims against Brown was dismissed pursuant to the terms of a settlement between Ms. Griffith and Brown. Litigation with the remaining Defendants has been ongoing for over a year and a half. However, after the Court permitted Defendants' counsel to withdraw on December 3, 2007, Defendants failed to retain new counsel and failed to either appear before the Court at a scheduled status conference on January 10, 2008, or respond to this Court's Order to Show Cause by February 8, 2008, as required by the Court. Consequently, on February 29, 2008, the Court entered a Default Judgment against Defendants.

Pursuant to this Default and as detailed in the instant Motion, Ms. Griffith asks the Court to award her damages in the amount of $240,574 plus additional punitive damages as the Court sees fit. In addition, Ms. Griffith is seeking statutory damages in the amount of $69,311. Because such statutory damages are overlapping with the disgorgement claim, a total damage award of $240,574 plus any punitive damages and interest is the total damage amount Ms. Griffith seeks here. Further, Ms. Griffith is seeking injunctive relief barring Defendant Barnes, Defendant IREIS, and any other companies formed by or associated with Defendants from engaging in any future real estate related activities similar to those perpetrated against Ms. Griffith. In addition, in a motion filed separately, Ms. Griffith also seeks an award of reasonable attorneys' fees and costs as required by law.

3

## II.   **ARGUMENT**

A.   Ms. Griffith is Entitled to Recover Full Damages as a Result of the
Default Judgment Entered in her Favor.

By virtue of the Default Judgment entered on February 29, 2008, Ms. Griffith has

prevailed on the merits of all of the well-pled allegations in her complaint. "A defaulting

defendant is deemed to admit every well-pleaded allegation in the complaint." *Adkins v. Teseo,*

180 F. Supp. 2d 15, 17 (D.D.C. 2001); *see also Carpenters Labor-Management Pension Fund v.*

*Freeman-Carder LLC,* 498 F. Supp. 2d 237, 241 (D.D.C. 2007); *Oliver v. Mustafa,* 929 A.2d

873, 878 (D.C. 2007).

As liability has now been established, the Court is now required to determine

damages to be awarded to Ms. Griffith. *See Adkins,* 180 F. Supp. 2d at 17; *SEC v. Management*

*Dynamics, Inc.,* 515 F. 2d 801, 814 (2d Cir. 1975); *Au Bon Pain Corp. v. Artect, Inc.,* 653 F.2d

61, 65 (2d Cir. 1981). The Court may make this determination based on affidavits and other

documentary evidence or may hold a hearing to determine damages. *Adkins,* 180 F. Supp. 2d at

17; *see also United Artists Corp. v. Freeman,* 605 F. 2d 854, 857 (5th Cir. 1979).

It is well established that, when a plaintiff may recover under more than one

theory of an action, the plaintiff may choose which of the alternative remedies she wishes to

pursue. *See Amber Resources Co. v. U.S.,* 73 Fed. Cl. 738, 748 (Fed. Cl. 2006) (court recognized

plaintiff's right to choose between restitution and reliance damages); *see also DeLima v. Bidwell,*

182 U.S. 1, 180 (1901). Ms. Griffith's Complaint sets forth ten causes of action, and Defendants

have been deemed to have admitted liability in each of these. Exercising her right to choose

which remedy to pursue, Ms. Griffith has elected to seek damages in the form of disgorgement

pursuant to her Ninth Cause of Action, unjust enrichment.

4

Although Ms. Griffith also seeks overlapping statutory damages for violations of TILA and HOEPA, which she seeks to have subsumed within the disgorgement damages amount, there are other claims in addition to unjust enrichment and/or the statutory claims for which Ms. Griffith could recover. Ms. Griffith has requested disgorgement and statutory damages only in an effort to obtain appropriate and satisfactory relief without burdening the Court with the analysis and justification of each of the ten counts that Defendants are liable for pursuant to the Default Judgment entered against both of them. In addition, as further set forth below, Ms. Griffith seeks prejudgment interest on the amount by which Defendants were unjustly enriched to commence on the date of the final sale of Ms. Griffith's home to Davis on November 4, 2005. Finally, in accordance with Ms. Griffith's overall goal of this litigation to ensure that Defendants are unable to prey on other vulnerable homeowners and the philosophy supporting punitive damages in the District of Columbia—to deter and punish wrongdoing—Ms. Griffith further seeks punitive damages. *See Robinson v. Sarisky*, 535 A.2d 901, 907 (D.C. 1988) ("Deterrence and punishment are the basic purposes of punitive damages ....") (citation omitted).

Accordingly, Ms. Griffith has set forth below an argument seeking disgorgement totaling $240,574, statutory fees totaling $69,311, prejudgment interest totaling $35,020, as of the date of this filing for a total of $275,594; and punitive damages in an amount to be determined by the Court. In support of these requests, attached at Exhibit A is the Expert Report of Gregory E. Smith, a director with LECG, Inc., an economic and financial consulting firm, who was retained to assist in the determination of damages resulting from Defendants' actions in this case.

B.    Disgorgement is an Appropriate Remedy For Unjust Enrichment.

Under District of Columbia law, which governs Ms. Griffith's common law claims, "[u]njust enrichment occurs when a person retains a benefit (usually money) which in

5

justice and equity belongs to another. In such case, the recipient of the benefit has a duty to make restitution to the other person 'if the circumstances of its receipt or detention are such that, as between the two persons, it is unjust for [the recipient] to retain it.'" *4934, Inc. v. District of Columbia Department of Employment Services*, 605 A.2d 50, 55-56 (D.C. 1990) (citation omitted); *see also Ererine v. Yancey*, 680 A.2d 1380, 1383 (D.C. 1996). The District of Columbia Court of Appeals held that the "[r]emedy of disgorgement, much like that of a constructive trust, is meant to provide just compensation for the wrong, not to impose a penalty; it is given in accordance with the principles governing equity jurisdiction, not to inflict punishment but to prevent an unjust enrichment." *In re Estate of Corriea,* 719 A.2d 1234, 1240 (D.C. 1998) (quoting *Sheldon v. Metro-Goldwyn Pictures Corp.*, 309 U.S. 390, 399, (1940)); *see also SEC v. Bilzerian*, 814 F.Supp. 116 (D.D.C. 1993) ("The primary purpose of disgorgement is not to punish the wrongdoer but rather to prevent the unjust enrichment of the wrongdoer by depriving him of ill-gotten gains").

Accordingly, disgorgement is an appropriate remedy to prevent Defendants' unjust enrichment at Ms. Griffith's expense. As Defendants have been found liable for the unlawful taking of Ms. Griffith's home and for profiting from two subsequent illegal transfers of the property, Defendants should be denied any profit or unjust enrichment from their actions.

In determining the amount of the disgorgement, the courts have stated that, because the purpose of disgorgement is remedial, not punitive, a court's equitable power is restricted to "property causally related to the wrongdoing." *United States v. Philip Morris U.S.A.,* 310 F. Supp. 2d 58, 63-64 (D.D.C. 2004) (quoting *SEC v. First City Financial Corp.*, 890 F.2d 1215, 1230-1231 (D.C. 1989) and adopting, by analysis, the rationale for disgorgement in securities actions to other situations). The D.C. Circuit noted that "[t]he requirement of a causal

6

relationship between a wrongful act and the property to be disgorged does not imply that a court

may order a malefactor to disgorge only the actual property obtained by means of his wrongful

act; rather, the causal connection required is between the amount by which the defendant was

unjustly enriched and the amount he can be required to disgorge." *SEC v. Banner Fund Int'l,*

211 F.3d 602, 617, 341 U.S.App.D.C. 175, 190 (D.C. 2000).  Accordingly, even in cases where

it is difficult to distinguish between legal and illegal profits, courts have held that actual profits

are appropriate to use when calculating disgorgement. *See United States v. Philip Morris U.S.A.,*

*Inc.,*  396 F.3d 1190, 1228, 364 U.S. App. D.C. 454, 492 (D.C. 2005) (noting that in *First City*

*Fin. Corp.,* "the government's showing of appellants' actual profits on the tainted transactions at

least presumptively satisfied its burden" of persuasion that its disgorgement figure reasonably

approximates the amount of unjust enrichment.).  Furthermore, the D.C. Circuit stated that, in

circumstances where the amount of disgorgement is not clear, "the risk of uncertainty should fall

on the wrongdoer whose illegal conduct created that uncertainty." *First City Fin. Corp.,* 890

F.2d at 1232.

　　　　To present her damages calculations to the Court, Ms. Griffith has retained Mr.

Gregory E. Smith ("Smith").  Smith is a director with LECG, Inc., an economic and financial

consulting firm, where he provides consulting services to corporations, government agencies,

and law firms. Among other specialties, Smith has extensive experience in the quantification of

damages and has over 20 years of business experience, including 16 years of accounting and

consulting experience and direct involvement in over 150 consulting engagements. He has

testified as an expert in matters before state and federal courts and has participated in mediation

proceedings. *See* Expert Report, Ex. A, App. A.

7

To calculate the amount of disgorgement appropriate under D.C. law, Smith reviewed the documents related to the unlawful transfers of Ms. Griffith's home to Brown and Davis and calculated the profit that Defendants gained on each transactions. *See* Expert Report, Ex. A. at ¶¶ 11-13. Smith calculated Defendants' net profit (gross sales proceeds minus closing costs and taxes) on the sale to Brown to be $140,147 and the net profit from the second sale to Davis to be $125,427, for a total profit from the two transactions of $265,574. Finally, Smith subtracted the $25,000 payment Defendant initially made to Ms. Griffith and concluded that the remaining amount—$240,574—is the appropriate measure of disgorgement here.

C.     Prejudgment Interest is Appropriate to Ensure That Ms. Griffith is Fully Compensated.

Unjust enrichment sounds in tort. *See Ellsworth Assocs., Inc. v. United States*, 917 F. Supp. 841, 846 (D.D.C. 1996). "In an action sounding in tort, District of Columbia law permits the award of prejudgment interest 'to the extent that it will make the injured party whole.'" *BCCI Holdings (Luxembourg) Societe Anonyme v. Khalil*, 56 F. Supp. 2d 14, 67 (D.D.C. 1999), rev'd on other grounds, 214 F.3d 168 (D.C. Cir. 2000). In the tort actions, like in securities actions, "[d]isgorgement rightly includes prejudgment interest to enable the [recovery of] the full amount of the defendants' unjust enrichment and to provide the possibility of complete compensation to the defrauded investors; to preclude defendants from enjoying an interest-free loan on their illicitly-obtained gains, the court requires them to pay interest on the amounts they disgorge." *SEC v. Levine*, 517 F. Supp. 2d 121, 141 (D.D.C. 2007).

Because an award of prejudgment interest is neither mandatory nor prohibited in tort actions, the determination of whether to "award prejudgment interest is committed to the sound discretion of the court." *BCCI Holdings*, 56 F. Supp. 2d at 68. The Supreme Court, holding that "prejudgment interest traditionally has been considered part of the compensation due plaintiff," has set forth five considerations to guide the court in this determination.

8

*Osterneck v. Ernst & Whinney,* 489 U.S. 169 (1989). In *BCCI Holdings,* the court summarized these considerations as follows:

> [1] whether prejudgment interest is necessary to compensate the plaintiff fully for his injuries; [2] the degree of personal wrongdoing on the part of the defendant; [3] the availability of ... investment opportunities to the plaintiff; [4] whether the plaintiff delayed in bringing or prosecuting the action; and [5] other fundamental considerations of fairness.

*BCCI Holdings,* 56 F. Supp. 2d at 68.

Applying these considerations to Ms. Griffith's case, it is clear that prejudgment interest is appropriate. First, disgorgement of the profits Defendants made as a result of the two transfers of Ms. Griffith's home does not fully compensate Ms. Griffith for her loss. Since November 4, 2005, the date of the sale to Davis, Ms. Griffith has been deprived of the time value of her property. Prejudgment interest is the only equitable means of compensating her for this loss. "[I]n awarding prejudgment interest to plaintiffs, courts have observed that the 'interest compensates for the time value of money and thus is often necessary for full compensation.' ... Such compensation is particularly appropriate here, when an award is intended to compensate for injuries sustained over the course of [an extended period.]" *Pugh v. Socialist People's Libyan Arab Jamahiriya,* 530 F. Supp. 2d 216, 264 (D.D.C. 2008) (citation omitted).

Second, as to the questions of Defendants level of personal wrongdoing, there is no question that only Defendants were at fault in this action. Ms. Griffith was in a vulnerable state as she faced the possible loss of her home through foreclosure. Defendants preyed on that vulnerability and her relative lack of sophistication in order to steal her home and rob her of the equity in it.

With regard to the third consideration, the housing market in the District of Columbia was still strong in 2004 and 2005 when Defendants perpetrated this fraud against Ms.

9

Griffith. Therefore, it is reasonable to assume that Ms. Griffith had ample opportunity to invest. While we can only guess at what Ms. Griffith's actions might have been had she not been tricked into this arrangement by Defendants, the fact that her home sold for $380,000 in November of 2005 is proof that she would have been able to sell the home for at least that amount.

Ms. Griffith did not delay in filing suit. As soon as she became aware of Defendants' actions when Defendants sought to evict her from her home, Ms. Griffith sought counsel to assist her in this action. Thus, the fourth consideration also weighs in favor of granting Ms. Griffith prejudgment interest.

Finally, as the court summarized, it is only "fair to treat the defendant as plaintiff's banker, with the plaintiff's damages having been on deposit with the defendant from the time plaintiff's claim accrued." *BCCI Holdings*, 56 F. Supp. 2d at 68.

The important question in determining whether a party is entitled to prejudgment interest is "whether the plaintiff has been deprived of the use of the money withheld and should be compensated for the loss." *District of Columbia v. Pierce Assocs., Inc.*, 527 A. 2d 306, 311 (D.C. 1987). Ms. Griffith clearly has been deprived of the time value of her property and deserves to be compensated for that loss. Accordingly, an award of prejudgment interest is appropriate.

Smith calculated the prejudgment interest based on the statutory rate of 6%. *See* D.C. CODE §§ 28-3302(a) & 15-109. The amount of prejudgment interest that has accrued as of the date of this filing is $35,020. *See* Expert Report, Ex. A at ¶14.

D.    In Addition, Ms. Griffith is Also Entitled to a Judgment Awarding Overlapping Statutory Damages Relative to the TILA and HOEPA Claims.

The damages provisions for TILA and HOEPA provide, in pertinent part,

> (a) Except as otherwise provided in this section, any creditor who fails to comply with any requirement imposed under this

10

part, including any requirement under section 1635 of this title, or part D or E of this subchapter with respect to any person is liable to such person in an amount equal to the sum of

...

(2)(A) (iii) in the case of an individual action relating to a credit transaction not under an open end credit plan that is secured by real property or a dwelling, not less than $200 or greater than $2,000;

...

(4) in the case of a failure to comply with any requirement under section 1639 of this title, an amount equal to the sum of all finance charges and fees paid by the consumer, unless the creditor demonstrates that the failure to comply is not material.

15 U.S.C.A. §§ 1640(a)(2)(A)(iii) & 1640(a)(4).

Section 1640(a)(2)(A)(iii) refers to violations of TILA and Section 1640(4) specifically refers to the HOEPA violation. Defendants, through default, have admitted liability for the TILA and HOEPA violations as adequately pled in Ms. Griffith's complaint. As such, statutory damages in the amount of $2,000 are appropriate for the TILA violation and $67,311 are appropriate for the HOEPA violation as the sum of all finance charges and fees. As set forth in detail in the Expert Report, the finance charge for the loan to Ms. Griffith was estimated to be the difference between (1) the two years of payments Ms. Griffith would have made under the loan plus the $170,000 repurchase price and (2) the original loan amount which is the sum of the mortgage that was paid off plus the $25,000 paid to Ms. Griffith. The difference between the two is the effective finance charge: $67,311. Accordingly, the statutory damages sought reflect the $2,000 cap under TILA and the total finance charge allowed under HOEPA, $67,311, totaling $69,311. *See* Expert Report, Exhibit A, ¶ 9.

11

Ms. Griffith notes that recovery of the $67,311 finance charge for the HOEPA claim and $2,000 for the TILA claim is duplicative of the unjust enrichment claim. Consequently, she requests that the statutory damages be awarded but that they be subsumed within the disgorgement damages.

E.    Punitive Damages are Appropriate for Defendants' Violation of CPPA and Their Intentional Torts.

D.C. CODE § 28-3905(k) provides for the award of punitive damages for violations of the CPPA. In another foreclosure savior scam perpetrated in the District of Columbia, the Court of Appeals held,

> Defendant's malicious conduct in gaining the confidence of homeowner, a frail, elderly, and vulnerable widow, by falsely advertising, in violation of Consumer Protection Procedures Act (CPPA), his foreclosure-avoidance services and thereby enabling defendant to gain her trust by a promise to save her home, after which he orchestrated a scheme to gain title to the home for a fraction of its value, warranted an award of punitive damages to homeowner's estate, separate from award of treble damages under CPPA.

*Byrd v. Jackson*, 902 A.2d 778 (D.C. 2006). Likewise, punitive damages are warranted for Defendants' violation of the CPPA in pursuit of their similar foreclosure savior scam.

Under the law of the District of Columbia, "[p]unitive damages are available for intentional torts ...." *Oliver v. Mustafa*, 929 A.2d 873, 878 (D.C. 2007). A court may award punitive damages when "it is shown by clear and convincing evidence that the tort committed by the defendant was aggravated by egregious conduct and a state of mind that justifies punitive damages." *Chatman v. Lawlor*, 831 A.2d 395, 400 (D.C. 2003). Defendants have admitted liability for fraud, unconscionability, fraudulent conveyance, and unjust enrichment. While a finding of fraud is not alone sufficient to warrant punitive damages, the *Chatman* Court found that defendants who preyed on vulnerable persons and "willingly engaged in a fraudulent

12

transaction ... that prolonged their financial distress," were guilty of "outrageous conduct such as maliciousness, wantonness, gross fraud, recklessness and willful disregard of another's rights" needed for an award of punitive damages. *See id.*

In this time of turmoil in the mortgage industry, the actions of Defendants, preying on vulnerable distressed homeowners such as Ms. Griffith, warrant the sanction of punitive damages in an amount to be determined by the Court. Ms. Griffith is not requesting a specific amount of punitive damages to be awarded recognizing that in jury trials, "the amount of punitive damages is left to the jury's discretion." *Robinson*, 535 A.2d at 907. In bench trials, the "punitive damages [award] is ... the discretion of the trial court." *See Washington Med. Ctr., Inc. v. Holle*, 573 A.2d 1269, 1284 (D.C. 1990). Likewise, the determination of the amount of punitive damages is properly left to the Court's discretion in this action.

F.    An Injunction Barring Defendants from Engaging in Similar Conduct in the District of Columbia Is an Appropriate Sanction to Safe-Guard the Public Interest.

The stated purposes of CPPA are to "assure that a just mechanism exists to remedy all improper trade practices; [and] promote, through effective enforcement, fair business practices throughout the community." D.C. CODE § 28-3901(b)(2). Defendants' actions clearly violate the stated purposes of this action and the penalty provision of CPPA allows for injunctions "against the use of the unlawful trade practice." D.C. CODE §28-3905(k)(1)(D); *see also Johnson v. Long Beach Mortg. Loan Trust 2001-4*, 451 F. Supp. 2d 16, 38 (D.D.C. 2006).

Ms. Griffith brought this action, in part, to ensure that Defendants were not allowed to prey on other vulnerable homeowners. Accordingly, an injunction barring such future real estate related practices by Defendants is appropriate. Those restrictions should include prohibitions on: (a) the making of any residential real estate related loans or mortgages not related to Defendant Barnes' primary residence; (b) facilitating, in any manner, the transfer of

13

any residential real estate not otherwise owned by Defendant Barnes; or (c) representing to any individual that Defendants can assist in resolving or otherwise addressing any residential real estate mortgage related debt or delinquency issue.

## III.    **CONCLUSION**

For the reasons set forth in this memorandum of law and in the accompanying Expert Report of Greg Smith, Ms. Griffith prays that the Court award total disgorgement and statutory damages in the amount of $240,574, prejudgment interest calculated at $35,020 as of today, punitive damages in an amount to be determined by the Court, and injunctive relief barring such future practices by Defendant Barnes, Defendant IREIS, and any other companies formed by or associated with Defendants.

## CERTIFICATE OF SERVICE

I hereby certify that on this 10<u>th</u> day of April, 2008, a copy of the foregoing

Plaintiff's *Motion for Damages Award in Connection with of Default Judgment Entered on*

*February 29, 2008* was served by operation of the Court's by U.S. mail to Defendants in this

matter:

        PAUL BARNES
        12516 Woodsong Lane
        Bowie, Maryland 20721

        IREIS, L.L.C.
        12516 Woodsong Lane
        Bowie, Maryland 20721

                    /s/ Leslie J. Abrams
                    Leslie J. Abrams