# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| LESLIE GRIFFITH, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:06CV01648 |
| | ) | (HHK) (JMF) |
| v. | ) | |
| | ) | |
| PAUL BARNES, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

EXPERT REPORT OF
GREGORY E. SMITH

April 8, 2008

## I.  ASSIGNMENT AND SUMMARY OF CONCLUSIONS

1.  I was retained by counsel for Leslie Griffith ("Plaintiff") to determine any damages due to the alleged actions of Paul Barnes, Michael Brown, and IREIS, LLC (collectively the "Defendants").  Specifically, I was asked to quantify statutory damages under Count I of the Complaint and to quantify the unjust enrichment of the defendants under Count IX of the Complaint.

2.  I have completed my analysis based on my own independent review of materials in the record to date and on facts I was able to obtain from other sources. It is my opinion that statutory damages under Count I total $67,311 under the Home Ownership and Equity Protection Act, and $2,000 under the Truth in Lending Act.  It is my opinion that damages under an unjust enrichment approach total $240,574.

1

## II.    QUALIFICATIONS RELATED TO THIS ASSIGNMENT

3.  I am a Certified Public Accountant and a Certified Forensic Financial Analyst. I have sixteen years of accounting and consulting experience.  I have significant experience quantifying damages in commercial disputes.  I have also authored articles and taught seminars relating to damages issues.  I have considerable experience analyzing accounting and bank records for a variety of purposes.  I have testified as an expert in matters before state and federal courts.  My resume and testimony since 2004 is included as Appendix A.

## III.    RETENTION, WORK AND ANALYSIS CONDUCTED

4.  I am a director with LECG, Inc, an economic and financial consulting firm. LECG is being compensated for my work in this matter on an hourly basis.  My hourly rate is $425. LECG is also compensated on an hourly basis for the work conducted by research and support staff.  LECG's compensation is not dependent in any way on the outcome of this matter.

5.  In performing my analysis, I have reviewed various pleadings, agreements, settlement statements, and accounting records.  The information that I reviewed and considered in my work on this matter is listed in Appendix B.

6.  The analysis and conclusions presented in this report are based on my work to date, and the material and information referred to in Appendix B. If additional material becomes available, I will evaluate it and update my analysis if it is necessary to do so.

2

## IV.    ANALYSIS

7. It is my understanding that the Court has entered judgment in favor of the Plaintiff on all counts in this matter. As mentioned above, I have been asked to quantify statutory damages and the unjust enrichment of the Defendants.

**Statutory Damages**

8. The Complaint in this matter sets forth the terms of a loan that Paul Barnes offered to Leslie Griffith in order to save her home from foreclosure. Under the terms of this loan, Mr. Barnes and/or IREIS would pay off Ms. Griffith's mortgage, which was originally $95,000 on her residence at 2619 Newton Street, NE in Washington, DC and pay Ms. Griffith $25,000. At any time over the next two years, Ms. Griffith could repurchase the home for $170,000. Ms. Griffith was also to pay $850 per month for two years, and Mr. Barnes and/or IREIS were responsible for upkeep and utilities.[1] Although Mr. Barnes allegedly had Ms. Griffith sign an agreement setting forth these terms, he allegedly took her copy of this agreement in March 2005, and has not returned it.[2]

9. I have been informed by counsel that under the Truth in Lending Act and the Home Ownership and Equity Protection Act, Plaintiff is entitled to statutory damages equal to the finance charge on the loan in question. I have calculated the total finance charges that would have been due under this loan in Exhibit 1. Assuming that Ms. Griffith would have made two years of monthly $850 payments and paid the repurchase price of $170,000, she would have paid $190,400. The original loan amount is the sum

---

[1] Source: Complaint to Obtain Damages, Equitable, Declaratory and Injunctive Relief, p. 6. The purported loan agreement also provided that Ms. Griffith could sell her remaining interest to Defendants Barnes and/or IREIS for $35,000.

[2] Source: Complaint to Obtain Damages, Equitable, Declaratory and Injunctive Relief, pp. 6-8.

of the mortgage paid off by the Defendants as well as the $25,000 paid to Ms. Griffith, or $123,089.[3] The difference, $67,311 as shown on Exhibit 1, is the effective finance charge on this loan.[4] Although Ms. Griffith's only made two payments, Defendants received the rest of the payments (plus more) when her house was sold in December 2004.

10. I understand that under the Truth in Lending Act, statutory damages are capped at $2,000, so damages under it are $2,000. Under the Home Ownership and Equity Protection Act, damages are $67,311.

**Unjust Enrichment**

11. Despite the alleged loan terms described above, Mr. Barnes and/or IREIS caused Ms. Griffith's residence to be sold in two separate transactions, one in December 2004, and again in November 2005.[5] In the first transaction, the house was sold to Defendant Michael Brown for $250,000.[6] Mr. Barnes executed the transaction as Ms. Griffith's attorney-in-fact allegedly without Ms. Griffith's knowledge or consent.[7]

12. In this transaction, after payment of the mortgage, closing costs, taxes, water bills and a home warranty, there were net proceeds of $140,147, as shown on Exhibit 2. Then in November 2005, the house was sold for $380,000 to a Pamela Davis. After payment of two mortgages, closing costs, taxes, and water bills, there were net proceeds of $125,427, also shown in Exhibit 2. From these two transactions, Defendants were able

---

[3] Although the Complaint indicates the original mortgage taken out by Ms. Griffith was for $95,000, because she was behind on payments, and the amount actually paid off in December 2004 was $98,089, I have used the higher payoff amount to be conservative.

[4] It may be argued that the finance charge I have calculated here should be reduced by any amounts spent by Mr. Barnes and/or IREIS on upkeep and utilities paid by them, I have received no information about any such payments and therefore have not considered them in this analysis.

[5] Source: Complaint to Obtain Damages, Equitable, Declaratory and Injunctive Relief and Settlement Statements dated 12/28/04 and 11/4/05.

[6] Settlement Statement dated 12/28/04.

[7] Source: Complaint to Obtain Damages, Equitable, Declaratory and Injunctive Relief p. 7

4

to generate $265,574 of net proceeds, while only paying $25,000 to Ms. Griffith, leaving Defendants' unjust enrichment at $240, 574, as shown on Exhibit 2.

13. In Exhibit 3, I have detailed the allocation of the net proceeds that were available to the Defendants. As shown therein, IREIS received $198,927 in these two transactions. Michael Brown received $10,000. Also shown in Exhibit 3 is a $41,500 payment to Marlin Godfrey. Counsel has informed me that this sum was paid to Mr. Godfrey at the direction of Mr. Barnes. And the Settlement Statement showed that $15,147 was due to the seller at closing. Ms. Griffith did not receive any money at the closing and since Mr. Barnes was acting as her attorney-in-fact, it is logical to conclude that he received this money. Finally, as mentioned above, Ms. Griffith did receive $25,000 in mid-January 2005.[8] After payment to Ms. Griffith, the total net proceeds to Defendants were $240,574.

## V.    PREJUDGMENT INTEREST

14. I have also been asked to calculate prejudgment interest on the amount of unjust enrichment through April 9, 2008. I started this calculation as of November 4, 2005, the date of the second sale of Ms. Griffith's home. I utilized a 6% interest rate, as specified under DC statutes and I have calculated simple interest. These calculations are set forth on Exhibit 5, and yield total prejudgment interest of $35,020.

Gregory E. Smith

---

[8] Source: Complaint to Obtain Damages, Equitable, Declaratory and Injunctive Relief, p. 8

LeCG

## Gregory E. Smith, CPA, CFFA, Director, LECG

1725 Eye Street, NW
Washington, DC 20006

Phone: 202-973-9861
Fax:     202-466-4487
Email: gesmith@lecg.com

### Summary

Greg Smith is a director with LECG, where he provides consulting services to corporations, government agencies, and law firms.  He is involved in the quantification of damages, the valuation of business interests, and reorganization consulting services.  Greg has over 20 years of business experience, including 16 years of accounting and consulting experience and direct involvement in over 150 consulting engagements.  He has testified as an expert in matters before state and federal courts and has participated in mediation proceedings.

### Litigation Consulting

Greg has provided litigation services on numerous engagements involving all phases of the litigation process. His assignments have included providing expert testimony on damages in intellectual property matters involving technologies in numerous industries including construction equipment, electronic data storage, computer peripheral devices, and gas sensors.  Greg has analyzed damages based on lost profits, reasonable royalties, and price erosion.  Greg has also analyzed damages in numerous breach of contract, fraud, and unfair competition matters.

### Reorganization Services

Greg has provided reorganization consulting services in relation to troubled companies in a number of industries including retailers, wholesalers, real estate entities, lenders, contractors, and hospitals. He has analyzed the feasibility of reorganization, investigated pre-petition activities and transactions, and provided financial and accounting services to debtors, creditors, and trustees.

### Valuation Services

Greg has prepared valuations of businesses and both tangible and intangible assets as part of bankruptcy and litigation proceedings as well as for financing and estate planning purposes.

# LECG

Greg has valued interests in many companies, including lenders, engineering firms, distributors, real estate operators, and medical imaging centers.

## Other Information

Prior to joining LECG, Greg was a director with Navigant Consulting, Inc. He was also previously a member and vice president with PENTA Advisory Services and held several consulting positions with C.W. Amos & Company.

Greg is a member of the AICPA, MACPA, GWSCPA, the Licensing Executives Society, and the National Association of Certified Valuation Analysts. He is a Certified Public Accountant and a Certified Forensic Financial Analyst.

## Education

MBA, with a concentration in Finance          University of Maryland

B.A. in Economics                             University of Virginia

## Testimony, Affidavits, and Expert Reports – 2004 to Present

- Deposition and Trial Testimony and Expert Report in re: Hecny Transportation, Inc. v. George Chu, et al., Case No. 98 C 7335, United States District Court for the Northern District of Illinois, Eastern Division. Subject Matter: Damages resulting from breach of contract and breach of fiduciary duty (trial testimony given in 2006, deposition testimony given in 2002).
- Declaration in re: Greater Southeast Community Hospital I, et al., Case No. 02-2250, United States Bankruptcy Court for the District of Columbia. (declaration issued in 2004).
- Deposition and Trial Testimony in re: Hunter Amenities International, Ltd. v. Dorothy Prentice Aromatherapy, Inc., Chancery No. 174063, Circuit Court of Fairfax County, Virginia. Subject Matter: Damages resulting from breach of contract and trademark infringement (testimony given in 2004).
- Deposition Testimony, Expert Report, and Declaration in re: Medgar Evers Houses Associates Limited Partnership v. The United States of America, Case No. 96-809 C, United States Court of Federal Claims. Subject Matter: Damages resulting from breach of contract (testimony given in 2004, declaration submitted in 2005).
- Testimony at Mediation in re: Dyncorp Information Systems, LLC v. The United States of America, ADR No. 04-05, Armed Services Board of Contract Appeals. Subject Matter: Valuation (testimony given in 2004).

LeCG                                                                    Appendix A

- Deposition and Trial Testimony and Expert Report in re: Barry Fiala, Inc. v. Stored Value Systems, Inc., Case No. 02-2248 MA, United States District Court for the Western District of Tennessee, Western Division.  Subject Matter: Damages resulting from patent infringement (testimony given in 2005 and 2006, report issued in 2004).
- Trial Testimony in re: Sophia Ghezai v. Bereket Haregot, Circuit Court for Montgomery County Maryland.  Subject Matter: Valuation of business interest (testimony given in 2005).
- Deposition Testimony and Expert Report in re: IntraComm, Inc., et al. v. Ken S. Bajaj, et al., Case No. 1:05CV955 CMH/TCH, United States District Court for the Eastern District of Virginia.  Subject Matter: Damages resulting from breach of contract (testimony given in 2006, report issued in 2005).
- Expert Report in re: Sensormatic Electronics Corporation v. WG Security Products, Inc. and EAS Sensorsense, Inc., Case No. 2-04CV-167-TJW, United States District Court for the Eastern District of Texas, Marshall Division.  Subject Matter: Damages resulting from patent infringement and damages resulting from breach of contract (report issued in 2006).
- Declaration in re: Derek Webb, et al. v. Mikohn Gaming Corporation and Progressive Games, Inc., Case No. 3:02-CV-1838 WS, United States District Court for the Southern District of Mississippi, Jackson Division (declaration issued in 2007).
- Expert Report in re: Robert M. Mumma, II v. Dauphin Deposit Bank and Trust Company, Civil Action  - Law No. 4753-S of 1993, In the Court of Common Pleas, Dauphin County, Pennsylvania.  Subject Matter: Damages resulting from breach of contract (report issued in 2007).

**Papers, Publications, and Presentations**

- "DC Ranks Last Among Regional Bankruptcy Courts in Output of Confirmed Cases," C.W. Amos & Company's Greater Washington, DC Bankruptcy Newsletter, January 1997 (with Charles R. Goldstein, CPA).
- "Approaches to Prejudgment Interest Awards Vary by Court," Legal Times Special Report on Intellectual Property, April 7, 1997 (with Terry L. Musika, CPA).
- "The Role of the Troubled Company/Turnaround Consultant," Presentation to the Northern Virginia Bankruptcy Bar Association, September 24, 1997.
- "Trends in Bankruptcy Filings and Pending Bankruptcies in Maryland," Cracking the Code, American Bankruptcy Institute, February 27, 1998 (with Neil H. Demchick, CPA and Charles R. Goldstein, CPA).
- "The Use of Damage Awards and Legal Cost Data in Evaluating Licensing Options," Licensing Executives Society 1998 Annual Meeting, October 28, 1998 (with Dr. William O. Kerr).

LECG                                                        Appendix A

- "How to Determine Patent Royalties," Legal Times Report on Intellectual Property, April 12, 1999 (with Michele M. Riley).
- "Royalty Rates for Technology," 2003 (Contributing Author)
- "Trends in Patent Infringement Lawsuits, Settlements and Damage Awards, 1990 – 2003," Patent Resource Group Patent Infringement Remedies Course, April 26, 2004
- "Trying and Winning a Civil Antitrust Case," Faculty member in mock trial presentation, ALI-ABA, December 2, 2005
- Guest Lecturer, Robert H. Smith School of Business, University of Maryland, Introduction to Business, December 13, 2005
- "Proving Damages and Issues to Consider in Pursuing and Defending the Damages Case," Patent Litigation 2006, Practicing Law Institute, September 12, 2006
- "Proving Damages and Issues to Consider in Pursuing and Defending the Damages Case," Patent Litigation 2007, Practicing Law Institute, September 7, 2007

Leslie Griffith v. Paul Barnes, et al
Documents Considered

Complaint to Obtain Damages, Equitable, Declaratory and Injunctive Relief
Settlement Statement dated 12/28/2004 (Fieldstone Mortgage)
Settlement Statement dated 11/04/2005 (Westar Mortgage)
Settlement Statement dated 11/04/2005 (Westar Mortgage – Second Trust)
First Rate Title & Escrow Disbursement Statement
Financing Agreement - Loan number 115284
Appraisal Disclosure
Financing Agreement - Loan number 115283
Federal Truth in Lending Statement - Loan number 115284
Note - Loan 115284
Regional Sales Contract dated September 12, 2005
First Rate Title & Escrow Loan Policy information for Weststar Mortgage
Deed dated November 4, 2005
Regional Sales Contract dated November 4, 2004
Mortgage Loan Commitment dated 12/28/2004
DC ST Sections 15-109 and 28-3302 (sections on interest)
15 USCA Section 1640 (selected portions)
15 USCA Section 1605 (selected portions)

Exhibit 1

Leslie Griffith v. Paul Barnes, et al
Calculation of Finance Charges Under Loan Agreement

| | | |
|---|---|---|
| Loan Payoff Amount a/ | $ 170,000 | |
| Monthly Payments for two years at $850 each a/ | 20,400 | |
| Total Payments Under Loan Agreement | | $  190,400 |
| Less Amount of Loan | | |
| Mortgage Assumed b/ | $ (98,089) | |
| Cash Paid to Ms. Griffith c/ | (25,000) | |
| Total Loan Amount | | (123,089) |
| Total Finance Charges | | $    67,311 |

a/    Source: Complaint p. 6
b/    Source: 12/28/04 Settlement Statement, line 504
c/    Source: Complaint p. 8

Exhibit 2

Leslie Griffith v. Paul Barnes, et al
Calculation of Unjust Enrichment
Based on Sales of 2619 Newton Street, NE

**December 28, 2004 Transaction a/**

| | | | |
|---|---|---|---|
| Sale Price | $ 250,000 | | |
| Less "Sellers Help" | (7,500) | | |
| Net Sales Price | | $ 242,500 | |
| Reductions to Proceeds | | | |
| Mortgage Payoff | | (98,089) | |
| Excess Deposit | | (100) | |
| Closing Costs | | (367) | |
| Taxes | | (2,750) | |
| Home Warranty | | (400) | |
| Water Bill/Escrow | | (647) | |
| Net Proceeds to Defendants | | | $   140,147 |

**November 4, 2005 Transaction b/**

| | | | |
|---|---|---|---|
| Sale Price | $ 380,000 | | |
| Less "Sellers Help" | (8,720) | | |
| Plus Taxes Paid by Seller | 449 | | |
| Net Sales Price | | $ 371,729 | |
| Reductions to Proceeds | | | |
| 1st Mortgage Payoff | | (201,903) | |
| 2nd Mortgage Payoff | | (37,776) | |
| Closing Costs | | (610) | |
| Taxes | | (5,713) | |
| Water Bill/Escrow | | (300) | |
| Net Proceeds to Defendants | | | 125,427 |

| | |
|---|---|
| Total Proceeds to Defendants | $   265,574 |
| Less Amount Paid to Plaintiff c/ | (25,000) |
| Defendants' Unjust Enrichment | $   240,574 |

a/    Source: Settlement Statement dated 12/28/04
b/    Source: Settlement Statement dated 11/4/05
c/    Source: Complaint p. 8

Exhibit 3

Leslie Griffith v. Paul Barnes, et al
Allocation of Proceeds From Property Sales a/

| | Dec. 2004 | Nov. 2005 | Total |
|---|---|---|---|
| IREIS | $ 125,000 | $ 73,927 | $ 198,927 |
| Michael Brown | | 10,000 | 10,000 |
| Marlin Godfrey | | 41,500 | 41,500 |
| Cash to Seller | 15,147 | | 15,147 |
| Amount Paid to Leslie Griffith b/ | (25,000) | | (25,000) |
| Total | $ 115,147 | $ 125,427 | $ 240,574 |

a/    Source: Settlement Statements dated 12/28/04 and 11/4/05
b/    Source: Complaint p. 8

Exhibit 4

Leslie Griffith v. Paul Barnes, et al
Calculation of Prejudgment Interest

| | | | | |
|---|---|---|---|---|
| Unjust Enrichment as of 11/4/2005 a/ | | | $ 240,574 | |
| Prejudgment Interest at | 6% b/ | | | |
| 11/5/2005 | to | 11/4/2006 | $  14,434 | |
| 11/5/2006 | to | 11/4/2007 | 14,434 | |
| 11/5/2007 | to | 4/9/2008 | 6,152 | |
| Total Prejudgment Interest | | | | $    35,020 |

a/    Source: Exhibit 2
b/    Statutory interest rate.  Interest is computed as simple interest.