UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LESLIE GRIFFITH,<br><br>               Plaintiff,<br><br>v.<br><br>PAUL BARNES, *et al.*,<br><br>               Defendants. | Case No: 1:06CV01648<br>(HHK) (JMF) |

### APPLICATION FOR ATTORNEYS' FEES AND COSTS

Pursuant to Rules 54(d)(2) and 55(b)(2) of the Federal Rules of Civil Procedure, 15 USC §1640(a)(3), and D.C. CODE § 28-3905(k), Plaintiff Leslie Griffith respectfully moves this Court for an order awarding attorneys' fees and costs in connection with the Default Judgment entered on February 29, 2008 on each Count of Plaintiff Leslie Griffith's Complaint as to Defendant Paul Barnes and Defendant IREIS, LLC, who are jointly and severally liable for damages. A memorandum in support of this motion, a proposed order, and other supporting papers are attached hereto.

Respectfully Submitted,

/s/Leslie Abrams
Benjamin Klubes, D.C. Bar No. 428852
Leslie Abrams, D.C. Bar No. 488280
Keba Riley, D.C. Bar No. 494993
1440 New York Avenue, N.W.
Washington, D.C. 20005
(202) 371-7000

Isabelle M. Thabault, D.C. Bar No. 318931
Robert M. Bruskin, D.C. Bar No. 164293
Washington Lawyer's Committee for
Civil Rights and Urban Affairs
11 Dupont Circle, N.W., Suite 400
Washington, D.C. 20036
(202) 319-1000

*Counsel for Plaintiff*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LESLIE GRIFFITH,<br><br>     Plaintiff,<br><br>v.<br><br>PAUL BARNES, *et al.*,<br><br>     Defendants. | Case No: 1:06CV01648<br>(HHK) (JMF) |

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S
## APPLICATION FOR ATTORNEYS' FEES AND COSTS

Pursuant to Rules 54(d)(2) and 55(b)(2) of the Federal Rules of Civil Procedure, 15 USC § 1640(a)(3), and D.C. CODE § 28-3905(k), Plaintiff Leslie Griffith ("Ms. Griffith") submits this Memorandum of Law in support of her Application for Attorneys' Fees and Costs. Affidavits of Benjamin Klubes, Skadden, Arps, Slate, Meagher & Flom, LLP ("Skadden"), April 9, 2008 ("Klubes Aff." attached as Ex. A), and Robert Bruskin, Washington Lawyer's Committee for Civil Rights and Urban Affairs ("WLC"), April 9, 2008 ("Bruskin Aff." attached as Ex. B), are filed herewith.

As a result of the Default Judgment granted by the Court on February 29, 2008, Ms. Griffith is the prevailing party on all claims of this case, including claims for violations of the Federal Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq.*, and the District of Columbia's Consumer Protection Procedures Act ("CPPA"), D.C. CODE § 28-3901, *et seq.*, which provide for the award of attorneys' fees and costs to a prevailing party. A *Motion for Damages Award in Connection with Default Judgment Entered on February 29, 2008* was filed on April 10, 2008. As such, and in accordance with the important purposes of TILA and the CPPA, attorneys' fees and costs are appropriate in this matter.

1

I.  **FACTUAL BACKGROUND**

On September 25, 2006, Ms. Griffith brought this lawsuit against Defendants Paul Barnes ("Defendant Barnes"), IREIS, L.L.C. ("Defendant IREIS") (collectively, "Defendants"), and Defendant Michael Brown ("Brown"). The Complaint alleged that the Defendants and Brown engaged in a predatory scheme to take title to the home of Ms. Griffith, a resident of the District of Columbia, and rob her of the equity in her home through a fraudulent loan scheme. Defendant Barnes, acting through Defendant IREIS and two straw purchasers, Brown and Pamela Davis ("Davis"), operated a scheme that has been unfortunately common in the Washington, D.C. area wherein predators locate and prey on individuals who are in dire financial straits, financially unsophisticated, and facing the loss of their homes through foreclosure.

In this case, Defendants convinced Ms. Griffith to temporarily transfer title to her home to them under the guise of loaning her money to keep her home from being foreclosed upon. They represented to Ms. Griffith that Defendant IREIS would hold her home in trust for two years during which time she would be able to repurchase her home by repaying the loan. The terms of the agreement offered by Defendants had an effective interest rate in excess of the maximum 24% per annum interest rate permitted by law in the District of Columbia. Moreover, Defendants had no intention of honoring the terms of the agreement the parties signed, which would have allowed Ms. Griffith to repurchase her home. Unbeknownst to Ms. Griffith, Defendant Barnes transferred title to Ms. Griffith's home to a third party, Brown, a week after signing the agreement; and less than a year later, Defendants transferred title to Ms. Griffith's home to yet another person, Davis. Eventually, when Ms. Griffith was unable to meet the terms of the usurious loan, Barnes and IREIS sought to evict Ms. Griffith from her home.

Ms. Griffith brought the instant action for: (1) damages based on violations of TILA, the Home Ownership and Equity Protection Act ("HOEPA"), 15 U.S.C. §§ 1602(aa) & 1639 and 12 C.F.R. § 226, *et seq.*, ("Regulation Z"); (2) damages based on violations of D.C. CODE § 28-3301, *et seq.*; (3) damages based on violation of the District of Columbia's Tenant's Opportunity to Purchase Act ("TOPA"), D.C. CODE § 42-3404.1, *et seq.*; (4) damages based on Defendants' breach of fiduciary and agency duties; (5) damages based on Defendants' fraudulent inducements and misrepresentations in the formation of loan contracts; (6) damages based on Defendants' having induced Ms. Griffith to enter into an unconscionable loan contract; (7) damages based on violations of CPPA; (8) damages based on Defendants' and Brown's fraudulent conveyance of Ms. Griffith's home; (9) damages based on the theory of unjust enrichment; and (10) damages based on Defendants' breach of their contract with Ms. Griffith.

On March 16, 2007, Ms. Griffith's claims against Brown were dismissed pursuant to the terms of a settlement between Ms. Griffith and Brown. Litigation with the remaining Defendants, however, has been ongoing for over a year and a half during which time Ms. Griffith sought to obtain discovery and prosecute this case. These actions were met with repeated delays by Defendants. Eventually, on December 3, 2007, as depositions were set to begin, the Court permitted Defendants' counsel to withdraw. Subsequently, Defendants failed to retain new counsel and failed to either appear before the Court at a scheduled status conference on January 10, 2008, or respond to this Court's Order to Show Cause by February 8, 2008, as required by the Court. Consequently, on February 29, 2008, the Court entered a Default Judgment against Defendants.

Pursuant to the Default Judgment, Ms. Griffith separately has filed a motion seeking disgorgement and statutory damages with prejudgment interest, injunctive relief, and

3

punitive damages. Ms. Griffith, herein, is applying for attorneys' fees and costs as statutorily allowed by TILA and CPPA. As set forth in detail in the Klubes and Bruskin Affidavits, Plaintiff seeks attorneys' fees and costs in the amount of $383,164. The amount requested includes $295,845 in fees and $18,358 in costs incurred by Skadden and $68,961 for the fees incurred by WLC.

**II.  ARGUMENT**

    **A.  Attorneys' Fees Are Appropriate.**

        **1.  Attorneys' Fees and Costs Awards Are Authorized by TILA and CPPA and Routinely Awarded**

Section 1640(a)(3) of TILA provides, in pertinent part, for, "in the case of any successful action to enforce the foregoing liability ... the costs of the action, together with a reasonable attorney's fee ...." Section 28-3905(k)(1) of CPPA, states, in pertinent part, "[a]ny consumer who suffers any damage as a result of the use or employment by any person of a trade practice in violation of a law of the District of Columbia ... may bring an action ... to recover or obtain ... reasonable attorney's fees."

Courts routinely award attorneys fees and costs for violations of TILA and the CPPA. *See Frazier v. Franklin Inv. Co.*, 468 A.2d 1338, 1341 (D.C. 1983) ("Under 15 U.S.C. § 1640(a)(3) of the Truth in Lending Act, a creditor who fails in connection with any consumer credit transaction to disclose to any person required consumer credit information is liable to that person in the case of any successful action for a reasonable attorney's fee as determined by the court."); *Greene v. Gibraltar Mortgage Investment Corp.*, 529 F. Supp. 186, 187 (D.D.C. 1981) (noting that "Congress has authorized fee awards under each of the two statutes, the Truth in Lending Act ... and the D. C. Consumer Protection Procedures Act") (citation omitted); *Williams*

*v. First Gov't Mortgage and Investors Corp.*, 225 F.3d 738 (D.C. Cir. 2000) (affirming award of attorneys' fees in a CPPA action).

### 2. Ms. Griffith Is Entitled to Attorneys' Fees as the Prevailing Party in This Action.

Ms. Griffith need only demonstrate that she is a "prevailing party" to be entitled to attorneys' fees and costs under TILA and CPPA. The D.C. District Court has adopted the prevailing party analysis used in Title VII litigation with respect to TILA and CPPA actions. In *Greene*, the court stated, "[w]hile this case is not a Title VII suit like *Copeland*, *Copeland's* analysis [with respect to prevailing party] applies here as it sets forth a general framework for awarding attorneys' fees." 529 F. Supp. at 188. Accordingly, the prevailing party in both TILA and CPPA cases may recover attorneys' fees.

A prevailing party has been defined as one who obtains "actual relief on the merits of his claim [that] materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff; a material alteration occurs when the plaintiff becomes entitled to enforce a judgment ... against the defendant." *Tally v. District of Columbia*, 433 F. Supp. 2d 5, 8 (D.D.C. 2006) (quoting *Farrar v. Hobby*, 506 U.S. 103, 111-13 (1992)) (citation omitted). In *Hensley v. Eckerhart*, the Supreme Court summarized the requirements for a plaintiff to be deemed a prevailing party stating that "plaintiffs may be considered 'prevailing parties' for attorney's fee purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing [the] suit." 461 U.S. 424, 433 (1983). The Supreme Court noted that "[t]he standards set forth in this opinion are generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party.'" *Hensley*, 461 U.S. at 433 & n.7 (citation omitted).

In obtaining a Default Judgment against Defendants, Ms. Griffith clearly meets the definition of a prevailing party. A default judgment is considered to be an "admission of liability for the well-pleaded allegations of the complaint." *Carpenters Labor-Mgmt. Pension Fund v. Freeman-Gardmer LLC*, 498 F. Supp. 2d 237, 241 (D.D.C. 2007); *see also Adkins v. Teseo*, 180 F. Supp. 2d 15, 17 (D.D.C. 2001); *Oliver v. Mustafa*, 929 A.2d 873, 878 (D.C. 2007). Accordingly, "[w]hen this Court granted Plaintiffs' Motion for Entry of Default, it accepted as true all of Plaintiffs' well-pleaded allegations as set forth in the ... Complaint." *Mwani v. Bin Ladin*, 244 F.R.D. 20, 22-23 (D.D.C. 2007). "A default judgment is a judgment on the merits as to those facts necessary to the judgment." *Bazuaye v. United States*, 41 F. Supp. 2d 19, 29 (D.D.C. 1999) (dictum). By virtue of the Default Judgment, Ms. Griffith has prevailed on the merits of all of the well-pled allegations in her Complaint.

Accordingly, Ms. Griffith, as the prevailing party in this case, is entitled to attorneys' fees and costs.

### 3. An Award of Attorneys' Fees and Costs Is Particularly Appropriate Here.

An award of attorneys' fees and costs is appropriate in this case for several reasons. First, an award promotes the stated purpose of TILA and CPPA. There are two relevant stated purposes of TILA. The first is to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit ...." *See* 15 U.S.C. § 1601(a). The second is to "assure a meaningful disclosure of the terms of leases of personal property for personal, family, or household purposes so as to enable the lessee to compare more readily the various lease terms available to him, limit balloon payments in consumer leasing, enable comparison of lease terms with credit terms where appropriate, and to assure meaningful and accurate disclosures of lease

terms in advertisements." *See* 15 U.S.C. § 1601(b). Likewise, two of the relevant purposes of CPPA are to "assure that a just mechanism exists to remedy all improper trade practices" and "promote, through effective enforcement, fair business practices throughout the community." D.C. CODE § 28-3901(b)(1) & (b)(2). Defendants' illegal actions were contrary to each of the stated purposes of TILA and the CPPA.

Attorneys' fees awards also encourage consumers to remedy marketplace abuses by making it possible for attorneys to devote resources to cases with relatively minor dollar amounts. *See Copeland v. Marshall*, 641 F.2d 880, 890 (D.C. Cir. 1980) (finding that a fee award provides incentive for attorneys to undertake work if the award adequately compensates attorneys for the work performed). "The purpose of attorneys' fee provisions is to ensure that consumers will be able to find attorneys who are willing to take their cases. Without provisions allowing court-ordered attorneys' fees and costs to a successful litigant, especially when the consumer claim involves a relatively small amount of damages, a statute merely provides hollow rights to consumers." Treena A. Kaye, *Availability of Attorneys' Fees Under Federal Consumer Statutes*, 63 Fla. B.J. 49 (1989).

Accordingly, attorneys' fees and costs are appropriate in this case.

**B.     Ms. Griffith's Application Should be Awarded in Its Entirety.**

    **1.     Ms. Griffith Has Submitted a Fair Lodestar Figure.**

"An award of attorneys' fees is calculated by multiplying a reasonable hourly rate by the number of hours reasonably expended on the case." *Smith v. Rohrer*, 954 F. Supp. 359, 364 (D.D.C. 1997) (citing *Hensley*, 461 U.S. at 433; *Copeland*, 641 F.2d at 891). This amount is commonly known as the "lodestar figure." The Klubes and Bruskin Affidavits filed herewith demonstrate both that Plaintiff seeks an award based on a reasonable hourly rate and a

reasonable number of hours expended in the litigation. Furthermore, the Klubes and Bruskin Affidavits contain sufficient detail to permit both the court and opposing counsel to conduct an informed appraisal of the merits of the application. *See Nat'l Ass'n of Concerned Veterans v. Secretary of Defense*, 675 F.2d 1319, 1327 (D.C. Cir. 1982) (also noting that it is not necessary to know "the exact number of minutes spent nor the precise activity to which each hour was devoted ....")

        a.    *Ms. Griffith Has Submitted Reasonable Hourly Rates For Her Attorneys' Time.*

The hourly rate customarily charged by counsel is "highly relevant proof of the prevailing community rates" for purposes of determining a reasonable hourly rate. *Nat'l Ass'n of Concerned Veterans*, 675 F.2d at 1326; *see also Kattan v. District of Columbia*, 995 F.2d 274, 278 (D.C. Cir. 1993) (the usual billing rate for counsel seeking attorneys' fees is presumptively reasonable); *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984) (noting that the rates charged in private representations afford relevant comparisons for determining the prevailing market rate as "the type of services rendered by lawyers, as well as their experience, skill and reputation, varies extensively ....").

For purposes of this application, Skadden is charging the standard hourly rate at which each attorney or paralegal billed at the time they began working on the case. For example, the billing rate for Leslie Abrams was $430 per hour when she first began working on this case in 2006. Despite the fact that her rate has increased since 2006, we are billing all of her time at the 2006 rate. The hourly rates for each Skadden attorney and paralegal are set forth in charts in the Klubes Affidavit at ¶¶ 11, 15, and 18.

The billing rates charged by WLC are derived from the rates for attorneys and law clerks of comparable experience in the community. Specifically, WLC relies upon the rates set

forth in the matrix prepared after *Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354, 371 (D.D.C. 1983), *aff'd*, 746 F.2d 4 (D.C. Cir. 1984), and updated for the current year by use of a methodology which calculates the matrix rates for each year by using the legal services component of the United States Consumer Price Index. *See* Bruskin Aff. ¶ 4. WLC is seeking reimbursement only for the work of Robert M. Bruskin, Senior Counsel at WLC and a former partner at Howrey, LLP, whose billing rate is $645 per hour. *See* Bruskin Aff. ¶¶ 8-9.

        b.     *Ms. Griffith's Counsel Have Submitted Only Reasonable Hours.*

Counsel for Ms. Griffith are fully mindful that no compensation is due for nonproductive time and that the exercise of billing judgment is an important component in fee setting. *See Hensley*, 461 U.S. at 1434; *Copeland*, 641 F.2d at 891. Accordingly, Ms. Griffith's counsel reduced the total number of hours expended in the representation of Ms. Griffith by approximately 40%.

        i.     *Fees Sought by Skadden.*

Skadden has limited the scope of its application for fees in three significant ways:

- Skadden has sought attorneys' fees for work completed as of the day the Court granted the Default Judgment, February 29, 2008, thus excluding all work for this motion for attorneys' fees and costs although such work is compensable. *See Goos v. Nat'l Ass'n of Realtors*, 997 F.2d 1565 (D.C. Cir. 1993) (recognizing that fees for time spent preparing attorneys, fees application compensable). Klubes Aff. ¶ 6.

- Skadden has excluded all charges related to the landlord tenant action resulting from Defendants' attempt to have Ms. Griffith evicted from her home and all hours spent only on settling with Defendant Brown. *Id.*

- In all phases of the litigation, Skadden has excluded fees for any attorney or paralegal billing less than ten hours to the case. *Id.*

9

Further, Skadden has attempted to exclude non-productive time from its fee application. *See Envtl. Def. Fund, Inc. v. Reilly*, 1 F.3d 1254, 1258 (D.C. Cir. 1993) (disallowing time spent on matters that do not contribute to a successful verdict, such as duplicative, unorganized, or unproductive efforts).

           ii.  *Fees Sought by WLC.*

WLC has submitted time only for the work of Robert M. Bruskin, the attorney who performed the bulk of the work on this case. As such, WLC excluded time billed by other attorneys and law clerks in the amount of $7,994 or approximately 10% of the total fees billed to this matter. Bruskin Aff. ¶ 5. Further, WLC has attempted to exclude non-productive time from its fee application.

       c.  *Ms. Griffith's Counsel Have Submitted Only Reasonable Expenses.*

Ms. Griffith seeks recovery for certain expenses associated with the prosecution of this matter. These expenses are set forth in Exhibit B to the Klubes Affidavit in accordance with the standard set forth in *Laffey*: "For most out-of-pocket costs, it is enough for plaintiffs to identify the expenses by category, with a general description of the types of charges included [with]in each category". *See Laffey* 572 F. Supp. at 383. Skadden has included certain expenses for computer legal research, in-house reproduction, outside research services, and professional services, including process servers and private investigators, and expert fees incurred by Skadden throughout the prosecution of this case. Klubes Aff. ¶ 23. All of these expenses are routinely billed to clients of Skadden, and the courts have stated that items routinely billed to a client are recoverable as attorneys' fees. *See Nat'l Ass'n of Manufacturers v. United States Dep't of Labor*, 962 F. Supp. 191, (D.D.C. 1997) (awarding expenses sought in fee application of Westlaw and Lexis search time). In particular, "[o]n-line research expenses are routinely billed to clients by

10

most major law firms." *Nat'l Ass'n.*, 962 F. Supp. at 196; *see also In re Janet G. Muklins*, 87 F.3d 2372, 1378 (D.C. Cir. 1996) (awarding attorneys' fees and expenses under the Ethics in Government Act including cab fare and computerized research.)

WLC has not sought to recover any expenses incurred in its representation of Ms. Griffith.

      d. *Defendants' Litigation Strategy Justifies the Remaining Hours.*

Defendants' litigation strategy compelled Ms. Griffith's attorneys to expend many of the hours requested in this application. For instance, at the outset of this case, Defendants acted to delay progress in the case and failed to answer or otherwise defend as to Ms. Griffith's Complaint resulting in Ms. Griffith's counsel being forced to file the initial motion for default which was entered by the Clerk of the Court on February 26, 2007. Defendants further failed to respond fully to discovery requests requiring Ms. Griffith's counsel to expend time attempting to resolve discovery disputes and finally filing a motion to compel. Defendants agreed to and then canceled depositions on three separate occasions. As a result, Ms. Griffith's counsel was required repeatedly to prepare to take and defend depositions and expend time to reschedule depositions which ultimately never took place.

This sampling of Defendants' litigation in this action makes plain that counsel's hours reflect what was necessary to litigate against Defendants' often uncooperative litigation tactics. *See Copeland*, 641 F.2d at 904 (stating that defendants "cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response").

For these reasons, the hours for which compensation is sought were reasonably expended.

### 2. **An adjustment to the lodestar is not appropriate.**

Courts rarely adjust the lodestar and have cautioned against improper adjustments to the lodestar. Most notably, the *Copeland* Court cautioned against adjusting the lodestar downward even in cases in which a plaintiff did not prevail on all counts of a complaint stating, "[n]o reduction of fee is appropriate where the 'issue was all part and parcel of one matter.'" *Copeland*, 641 F.2d at 892 n.18 (citation omitted); see also *Goos,* 997 F.2d at 1571-72. In the instant case, Ms. Griffith has prevailed on all counts, so no reduction is warranted.

        a. *Adjustment Is Inappropriate When The Lawsuit Serves the Public Interest.*

A downward adjustment to the lodestar would undermine TILA and CPPA's stated purposes of protecting the public interest. When a lawsuit serves the public interest, a downward adjustment of the lodestar is disfavored. *See City of Riverside v. Rivera*, 477 U.S. 561, 571-73 (1986) (plurality opinion) (upholding attorneys' fees of $245,456 where plaintiff's award totaled $33,350 because of public benefit advanced by litigation); see also *Copeland*, 641 F.2d at 906-08 (upholding Wilmer, Cutler & Pickering's fee of $160,000 where plaintiffs' monetary award totaled $33,000 because non-monetary relief furthered purposes of Title VII).

As discussed above, TILA and CPPA have stated purposes of protecting the public interest by helping consumers avoid the uninformed use of credit and preventing and remedying unfair trade practices. Moreover, an award of attorneys' fees itself furthers the public interest by creating an economic disincentive to engage in the illegal practices. *See Copeland*, 641 F.2d at 895 (finding that liability for attorneys' fees deters illegal behavior). Because Ms. Griffith's lawsuit serves the public interest by prosecuting a predatory lender who has flagrantly violated both TILA and CPPA and furthering the purposes of both acts, a downward adjustment in the lodestar is not appropriate.

### b. *Proportionality Does Not Warrant a Downward Adjustment of the Lodestar.*

Finally, it is clear that the proportionality of the disgorgement damages sought to the amount of attorneys' fees sought cannot be a basis for a downward revision of the lodestar. As a district court in Delaware has stated, "[a]ttorney fee awards under fee-shifting statutes often bear little or no relation to the actual or statutory damages recovered under those statutes ... This result is sanctioned because ... fee shifting statutes enhance enforcement of important civil rights, consumer protection, and environmental policies ... Fee awards at 'competitive rates' help 'assure that attorneys will take such cases, and hence increase the likelihood that the congressional policy of redressing [these] public interest claims will be vindicated.'" *Perez v. Perkiss*, 742 F. Supp. 883, 891 (D. Del. 1990) (citation omitted) (awarding $10,110 in attorneys' fees after plaintiff recovered $1,200 in a jury trial on the Fair Debt Collections Practices Act); *Freeman v. B & B Assoc.*, 595 F. Supp. 1338 (D.D.C. 1984), rev'd on other grounds, 790 F.2d 145 (D.C. Cir. 1986) (awarding $31,860 in attorneys' fees after plaintiff successfully settled a TILA case and prevented foreclosure on his home); *LeBron v. Washington Metro. Area Transit Auth.*, 665 F. Supp. 923 (D.D.C. 1987) (awarding $53,673.35 in attorneys' fees and $1,102.75 in compensatory damages on plaintiff's First Amendment civil rights claim). The attorneys' fees and costs sought in this action serve a recognized purpose beyond mere compensation as they are an economic deterrent to similar wrongdoing.

### III. <u>CONCLUSION</u>

For the reasons set forth in this memorandum of law and in the accompanying affidavits of Benjamin Klubes and Robert Bruskin, this Court should award Ms. Griffith's counsel the requested lodestar figure and expenses totaling $383,164.

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of April, 2008, a copy of the foregoing *Plaintiff's Application for Attorneys' Fees and Costs* was served by operation of the Court's by U.S. mail to Defendants in this matter:

PAUL BARNES
12516 Woodsong Lane
Bowie, Maryland 20721

IREIS, L.L.C.
12516 Woodsong Lane
Bowie, Maryland 20721

/s/ Leslie J. Abrams
Leslie J. Abrams