UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LESLIE GRIFFITH,<br><br>                Plaintiff,<br>v.<br><br>PAUL BARNES, *et al.*,<br><br>                Defendants. | Case No: 1:06CV01648<br>(HHK) (JMF) |

## SUPPLEMENT TO APPLICATION FOR ATTORNEYS' FEES AND COSTS

On April 11, 2008, Plaintiff filed her Application for Attorneys' Fees and Costs (the "Application") and a memorandum in support of that application in the above-captioned matter with this Court pursuant to Rules 54(d)(2) and 55(b)(2) of the Federal Rules of Civil Procedure, 15 USC §1640(a)(3), and D.C. CODE § 28-3905(k). On August 11, 2008, the Court issued an Order (the "Order") holding Plaintiff's Application in abeyance until Plaintiff provides further evidence whereby this Court can assess the reasonableness of the fees requested in the Application. Plaintiff respectfully submits the following supplemental information and the attached supporting papers with respect to her counsel at Skadden, Arps, Slate, Meagher & Flom, LLP ("Skadden") and the Washington Lawyer's Committee for Civil Rights and Urban Affairs ("Washington Lawyer's Committee").

### I. SKADDEN'S HOURLY BILLING RATES ARE THE APPROPRIATE LODESTAR FIGURE

The Court's Order requested that Plaintiff provide evidence regarding the second and third prongs of the elements set forth in *Covington v. District of Columbia*, 57 F.3d 1101 (D.C. Cir. 1995) regarding the reasonableness of the fees requested with respect to her counsel at Skadden. Specifically, Plaintiff has been asked to submit evidence with respect to (a) "her

"attorneys' skill, experience, and reputation" and (b) "the prevailing market rates in the relevant community." Order at 2-3.

### (a) Counsels' Skills, Experience and Reputation

Plaintiff hereby submits the biographies of each of the Skadden attorneys who devoted a significant amount of time to prosecuting this case and for whose time fees were requested in the Application. Ex. A (Sandler Biography); Ex. B (Klubes Biography); Ex. C (Abrams Biography); Ex. D (Riley Biography); and Ex. E (Hletko Biography). As demonstrated by Ex. A, Andrew Sandler earned an M.B.A. from the University of Pennsylvania Wharton School of Economics in 1983, a J.D. from the University of Pennsylvania in 1982 and a B.A. from Union College in 1979. Sandler leads Skadden's Consumer Financial Services Enforcement and Litigation Practice and has served as "lead defense counsel in more than 50 class action cases in federal and state courts throughout the country." Ex. A. Sandler has been a frequent speaker on panels regarding consumer financial services and fair lending matters and is actively involved with bar association sections focusing on those matters. Ex. A. Likewise, Benjamin B Klubes' biography demonstrates that he has also engaged extensively in complex federal court civil litigation, with an emphasis in financial services matters, and has experience in civil rights litigation. Ex. B. Klubes earned a J.D. from Harvard Law School, with *magna cum laude* honors in 1990 and a B.A. from George Washington University in 1987, with *summa cum laude* honors. Ex. B. Sandler and Klubes are also co-authors of CONSUMER FINANCIAL SERVICES (ANDREW L. SANDLER, BENJAMIN B. KLUBES & ANAND S. RAMAN, CONSUMER FINANCIAL SERVICES (Law Journal Press ed., 2001)), a leading treatise in the area, and each has authored other publications in that area and litigation and enforcement matters. Ex. A and Ex. B.

Each of the three associates who worked on this matter under Sandler's and Klubes' direction practiced complex civil litigation for three to six years, and two of them also have worked on a variety of consumer financial services matters. *See* Ex. C-E. Leslie Abrams earned a J.D. from Yale Law School in 2002 and a B.A. from Brown University in 1997 and clerked for Judge Marvin J. Garbis on the United States District Court for the District of Maryland following law school. Ex. C. Keba Riley earned a J.D. from Howard University School of Law with *magna cum laude* honors in 2002 and a B.S. from the University of Maryland College Park in 1996, and clerked for Magistrate Judge Charles B. Day on the United States District Court for the District of Maryland following law school. Ex. D. Finally, Valerie Hletko earned a J.D. from the University of Chicago Law School in 2001, an M.T.S. from Harvard College in 1998 and a B.A. from Kenyon College in 1995. Ex. E. Here, counsels' hourly rates are reasonable in light of their education, significant experience, and skill and expertise in complex federal court civil litigation, particularly consumer financial services matters.[1]

### (b)   Skadden's Rates Are In Line With The Prevailing Market Rates

Plaintiff seeks attorneys' fees based on Skadden's usual hourly billing rates, which Plaintiff believes are consistent with the prevailing market rates in Washington, D.C. for complex federal court civil litigation.[2] The hourly rate customarily charged by counsel is "highly relevant proof of the prevailing community rates" for purposes of determining a reasonable

---

[1] Neither Ms. Applembaum nor Ms. Humphrey, the Legal Assistants who worked on this matter, are still with Skadden. However, both are college graduates; Ms. Applebaum is a graduated of Skidmore College and Ms. Humphrey is a graduate of Spellman College. Ms. Humphrey, after two years with Skadden, is entering her first year of law school this fall at The Catholic University School of America's Columbus School of Law.

[2] As discussed in the Klubes Affidavit submitted with the Application, the lowest billing rate for each of the Skadden attorneys during the time period during which they worked on this case is the basis for the lodestar requested. Klubes Aff. ¶9.

hourly rate. *See Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1326 (D.C. Cir. 1982); *see also Kattan v. District of Columbia*, 995 F.2d 274, 278 (D.C. Cir. 1993) (the usual billing rate for counsel seeking attorneys' fees is presumptively reasonable); *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984) (noting that the rates charged in private representations afford relevant comparisons for determining the prevailing market rate as "[t]he type of services rendered by lawyers, as well as their experience, skill and reputation, varies extensively"). The prevailing market rate is that which is prevailing "for attorneys of reasonably comparable skill, experience, and reputation." *Covington*, 57 F.3d at 1108. As the D.C. Circuit has explained:

> [W]hen fixed market rates already exist, there is no good reason to tolerate the substantial costs of turning every attorneys fee case into a major ratemaking proceeding. *In almost every case, the firms' established billing rates will provide fair compensation.* The established rates represent the opportunity cost of what the firm turned away in order to take the litigation; they represent the lawyers' own assessment of the value of their time.

*Laffey v. Northwest Airlines, Inc.,* 746 F.2d 4, 24 (D.C. Cir. 1984), *overruled on other grounds by Save Our Cumberland Mountains, Inc. v. Hodel*, 857 F.2d 1516 (D.C. Cir. 1988).

Consistent with Judge Lamberth's extensive recent opinion on attorneys' fees awards, the appropriate community comparison for "similar services" here should be complex, federal court civil litigation, and not any more narrowly defined subset market. *See Miller v. Holzmann*, No. 95-1231, 2008 U.S. Dist. LEXIS 62500, at *29-47 (D.D.C. Aug. 12, 2008).[3] Further, courts in this Circuit endeavor to award attorneys fees based, in part, on what counsel would earn in the market. *See Sexcius v. District of Columbia,* 839 F.Supp. 919, 923 n.8 (D.D.C. 1993) (*citing*

---

3   To the extent that the Court would look to a more narrowly defined market related to consumer financial services and predatory lending matters, Plaintiff's counsel's practice and experience is precisely within any such more narrowly defined market and "prevailing community rates." As explained above, Plaintiff's counsel's practice focuses heavily on consumer financial services litigation and enforcement involving fair lending, predatory lending and unfair and deceptive trade practices with respect to the underwriting, origination and servicing of mortgage loans, albeit generally representing defendants. Thus, Plaintiff's counsel's rates are consistent with those of "the prevailing community rates."

*Copeland v. Marshall,* 641 F.2d 880, 894 (D.C. Cir. 1980) (*en banc*) in a case brought under 42 U.S.C. § 1988 for the proposition that "the District of Columbia Circuit has long recognized that under fee-shifting statutes, attorneys should be compensated 'for the market value of services rendered'").

A recent survey of law firm billing rates reflecting the range of hourly rates billed by major, comparable law firms with complex federal court civil litigation practices in Washington, D.C. is attached hereto as Ex. F. The following data is reflected in the 2007 National Law Journal Sampling of Law Firm Billing Rates:

| Firm Name<br>Partner Billing Rates<br>Associate Billing Rates | Firm Name<br>Partner Billing Rates<br>Associate Billing Rates | Firm Name<br>Partner Billing Rates<br>Associate Billing Rates |
|---|---|---|
| Arent Fox<br>Partners $395 - $675<br>Associates $240-$440 | Dickstein Shapiro<br>Partners $425-$825<br>Associates $225-$440 | Patton Boggs<br>Partners $320-920<br>Associates $205-$520 |
| Covington & Burling<br>Partners $510-$800<br>Associates $240-$525 | Hogan & Hartson<br>Partners $300-$850<br>Associates $150-$525 | Wilmer, Cutler, Pickering, Hale and Dorr<br>Partners $475-$1,000<br>Associates $215-$495 |

The National Law Journal, *A nationwide sampling of law firm billing rates* (Dec. 10, 2007), *available at* http://www.law.com/jsp/nlj/PubArticleNLJ.jsp?id=900005497835 (by subscription only).

Plaintiff believes that an award of attorneys' fees based upon Skadden's usual billing rates is appropriate given Skadden's extensive experience in complex federal court civil litigation, including predatory lending and civil rights matters, and the skills and experience of the attorneys who represented Plaintiff in this matter. As reflected in the NLJ Survey, Skadden's hourly rates of $760-$780/hour for a partner and a $430/hour for an associate are comparable to

those charged by other large Washington, D.C. law firms. As noted in the Application, Plaintiff seeks fees at the hourly rate of each attorney charged at the time he or she commenced work on the matter, rather than the current hourly rate, although currently hour rates have been recognized repeatedly by courts in this District as appropriate to compensate counsel as "an appropriate adjustment for delay in payment – whether by the application of current rather than historic hourly rates or otherwise." *Missouri v. Jenkins*, 491 U.S. 274, 284 (1989); *see Miller* at * 50-53 (collecting cases). Therefore, Skadden's established hourly billing scale as set forth in the Application provides a reasonable and appropriate hourly rate with which the Court may calculate the lodestar figure.[4] Further, for the reasons stated in Plaintiff's Application at p. 14-15, a downward adjustment of the lodestar would be inappropriate here. Accordingly, Plaintiff is requesting fees in the amount of $295,845 for the work performed by her Skadden attorneys[5].

## II. THE WASHINGTON LAWYER'S COMMITTEES' FEES ARE SUPPORTED BY THE CONSUMER PRICE INDEX FOR LEGAL SERVICES

In her initial Application, Plaintiff sought a fee award based on an hourly rate of $645 for work performed by the Washington Lawyer's Committee. As stated in the Bruskin Affidavit accompanying the Application, this fee request was based on the rates set forth in the matrix prepared after *Laffey v. Northwest Airlines, Inc.*, 572 F.Supp 354, 371 (D.D.C. 1983) *aff'd*, 746 F.2d 4 (D.C.Cir. 1984), and updated for the current year through use of a methodology which calculates the matrix rates for each year by application of the Legal Services Component of the

---

[4] Notably, "the market generally accepts higher rates from attorneys at firms with more than 100 lawyers than from those at smaller firms-presumably because of their greater resources and investments" *Wilcox v. Sission*, No. 02-1455, 2006 U.S. Dist. LEXIS 33404, at *8 (D.D.C. May 25, 2006).

[5] This amount only reflects Skadden's request for attorneys' fees. It does not included the requested amount for costs. In total, Plaintiff is requesting $314,203 for Skadden's attorneys' fees and costs, including $295,845 in fees and $18,358 in disbursements.

United States Consumer Price Index. (Bruskin Aff., Ex. B, at ¶¶4-5). In its August 11, 2008 Order holding Plaintiff's Application in abeyance, the Court requested the submission of the appropriate Consumer Price Index in order for the Court to verify the accuracy of the fees requested in the Bruskin Affidavit.

In compliance with the Court's request, Plaintiff submits the attached Affidavit of Gregory E. Smith (the "Smith II Affidavit") as Ex. G. As the Court will recall, Mr. Smith was qualified as an expert on the calculation of damages during the damages phase of the default proceedings. *See* Damages Hr'g. Tr. at p. 10; Court's Mem. of Order for Damages at p. 2 n. 2. As such he is fully qualified to provide the information sought by the Court relating to the fees of the Washington Lawyer's Committee.

The calculation of the appropriate hourly rate for organizations such as the non-profit Washington Lawyer's Committee which do not have actual billing rates, begins with the various Laffey matrices which are attached as appendices to the District Court's Opinion in *Covington v. District of Columbia*, 839 F. Supp. 894, 904 (D.D.C. 1993). There, Judge Lamberth reprints both the original Laffey Matrix as updated by the U.S. Attorney's Office for the District of Columbia (Appendix B) and the so-called "updated Laffey Matrix" (Appendix A) that the Court notes had "been relied upon, at least in part, by six District of Columbia district judges." *Id.* at 898 (citations omitted). As of 1989 these two charts indicated virtually identical hourly rates for counsel with 20+ years of experience (USAO rate of $260/hour verses updated Laffey rate of $265/hour). To develop an appropriate rate for similarly experienced counsel in 2007/2008, Mr. Smith was asked by counsel to apply the legal services component of the United States Consumer Price Index for the years since 1989 to the updated Laffey base rate of $265 for 1988/1989. Use of this CPI has been approved in several cases in this District. *See e.g. Smith v.*

7

*District of Columbia*, 466 F. Supp. 2d 151, 156 (D.D.C. 2006); *Salazar v. District of Columbia*, 123 F. Supp 2d 8, 13-14 (D.D.C. 2000).[6]

Thus, the Smith II Affidavit includes the Consumer Price Index data requested by the Court. *See* Ex. G at ¶ 4, note 1 and Attachment 2. Mr. Smith also calculates and confirms that applying this index to the updated Laffey Matrix reprinted in the *Covington* case generates the $645/hour rate sought in the Bruskin Affidavit. *See* Ex. G at ¶ 5 and Attachment 1. Applying this rate to the hours claimed in the Bruskin Affidavit produces a fee request of $68,961.

Dated: September 9, 2008

                                                      Respectfully Submitted,

                                                      _____/s/Keba Riley_____
Benjamin Klubes, D.C. Bar No. 428852
Leslie Abrams, D.C. Bar No. 488280
Keba Riley, D.C. Bar No. 494993
1440 New York Avenue, N.W.
Washington, D.C. 20005
(202) 371-7000

Isabelle M. Thabault, D.C. Bar No. 318931
Robert M. Bruskin, D.C. Bar No. 164293
Washington Lawyer's Committee for
Civil Rights and Urban Affairs
11 Dupont Circle, N.W., Suite 400
Washington, D.C. 20036
(202) 319-1000

*Counsel for Plaintiff*

---

[6] Other courts have preferred to use the USAO Laffey Matrix. *See e.g. Miller v. Holzman*, Civil Action No. 95-1231 (D.D.C., August 12, 2008); *Yazdani v. Access ATM*, 474 F. Supp. 2d 134, 138 (D.D.C. 2007); *Am. Lands Alliance v. Norton*, 525 F. Supp. 2d 135, 148-9 (D.D.C. 2007). While Plaintiff believes the use of the legal services CPI is the more appropriate way to determine current hourly rates, for the Court's convenience, the current version of the USAO Laffey Matrix can be found at www.usdoj.gov/usao/dc/Divisions/Civil_Division/Laffey_Matrix_3.html.

8

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 9th day of September, 2008, a copy of the foregoing *Supplement to Plaintiff's Application for Attorneys' Fees and Costs* was served by operation of the Court's by U.S. mail to Defendants in this matter:

PAUL BARNES
12516 Woodsong Lane
Bowie, Maryland 20721

IREIS, L.L.C.
12516 Woodsong Lane
Bowie, Maryland 20721

                                                   /s/ Keba Riley_____
                                                         Keba Riley